■ ROBERT J. KENNEDY, Respondent, v ANTONIA C. NOVELLO, as Commissioner of Health of the State of New York, et al., Appellants. [750 NYS2d 175] —Lahtinen, J. Appeal from an order of the Supreme Court (Cannizzaro, J.), entered September 14, 2001 in Albany County, which, inter alia, granted plaintiff's motion for summary judgment.

The current dispute between optometrists and ophthalmologists, which was commenced by an ophthalmologist as a citizen taxpayer action (*see* State Finance Law § 123-b), involves the determination by the Department of Health (hereinafter DOH), after consultation with the Department of Education, to authorize Medicaid reimbursements to optometrists for certain procedures related to eye care. Plaintiff contends that such procedures do not fall within the scope of the practice of optometry as defined in Education Law § 7101 and, thus, that the use of Medicaid funds to reimburse optometrists for the procedures constitutes an illegal expenditure of state funds.

The practice of optometry was redefined by the Legislature in 1995 (L 1995, ch 517, § 1), with a primary purpose of permitting optometrists to use certain drugs therapeutically in their practice (*see* Mem of Assembly, 1995 McKinney's Session Laws of NY, at 2212). The statutory definition excluded from the practice of optometry "any injection or invasive modality" and further provided, among other things, that "invasive modality means any procedure in which human tissue is cut, altered, or otherwise infiltrated by mechanical or other means" (Education Law § 7101).

Following enactment of the legislation, the New York State Optometric Association sought to have numerous procedures recognized as falling within the scope of the practice of optometry for purposes of Medicaid reimbursement. DOH consulted with representatives from the optometry and ophthalmology professions regarding the various procedures, but was unable to resolve the status of some of the procedures. As a result, DOH's Office of Medicaid Management requested an opinion from the Education Department's Office of Professions (hereinafter Professions Office) as to whether 21 procedures previously approved by the State Board for Optometry fell within the parameters of optometry. In November 1999, the Professions Office notified DOH that it had concluded that 17 of the 21 procedures constituted the practice of optometry and, in April 2000, DOH issued a Medicaid Update indicating that optometrists would be eligible for Medicaid reimbursement for 13 of the procedures. Plaintiff argues that 3 of the 13 approved procedures are statutorily excluded from the practice of optometry.

Briefly described, the procedures in dispute are as follows: (1) closure of the lacrimal punctum, by plug—a procedure involving treatment of chronic dry eye by inserting a collagen or silicon plug into the tear duct (punctum) to prevent tears from draining from the eye; (2) probing the nasolacrimal duct, with or without irrigation—a diagnostic procedure involving probing with a wire stent and possibly irrigating with saline solution the passage through which tears drain into the nose in order to determine whether there is any blockage; and (3) probing the lacrimal canaliculi, with or without irrigation—a procedure similar to probing the nasolacrimal duct except that it involves probing the passage that runs from the punctum to the nasolacrimal duct. Defendants concede that if, during treatment, it is determined that anesthesia is necessary to conduct any of the procedures on a particular patient, then an optometrist cannot perform the procedure.

After the disputed procedures were authorized by DOH, several optometrists were reimbursed in State Medicaid funds for performing some of the procedures. Plaintiff then commenced this action in July 2000 and, eventually, all parties moved for summary judgment. Supreme Court found that each of the procedures constituted an "invasive modality" within the meaning of Education Law § 7101 and, therefore, were not properly practiced by optometrists. The court granted plaintiff's motion for summary judgment, declared it illegal to provide Medicaid reimbursements to optometrists for performing the procedures

and enjoined DOH from using State Medicaid funds to reimburse optometrists for performing the three procedures. This appeal ensued.

Initially, we address the standing of plaintiff to bring this action, an issue which has been asserted on appeal only by defendant Jeffrey Cooper and not by the state defendants. Standing pursuant to State Finance Law § 123-b is narrowly construed (*see Rudder v Pataki*, 93 NY2d 273, 281; *Matter of Transactive Corp. v New York State Dept. of Social Servs.*, 92 NY2d 579, 589) and we find that the dispositive activity challenged here is the state's nonfiscal determination that the procedures in question fell within the practice of optometry and not the necessarily concomitant decision by DOH that the subject procedures are covered by Medicaid when performed by optometrists. Accordingly, we do not find "a sufficient nexus to fiscal activities of the State to allow for section 123-b standing" (*Rudder v Pataki, supra* at 281). Further, plaintiff does not contend that Medicaid funds are not lawfully allocated to DOH nor does he seek to save state funds; instead, he seeks a redistribution of funds that favors ophthalmologists over optometrists. Allegations attacking the "alleged mismanagement of funds or the arbitrary and capricious distribution of funds lawfully allocated to an agency are not covered by section 123-b" (*Matter of Transactive Corp. v New York State Dept. of Social Servs., supra* at 589).

Moreover, the complaint should be dismissed on the merits. While a question of "pure legal interpretation" of clear and unambiguous statutory terms requires no deference to an agency's interpretation (*Matter of Toys "R" Us v Silva*, 89 NY2d 411, 419; *see Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 102), where the statutory language is "special or technical and does not consist of common words of clear import" (*Matter of New York State Assn. of Life Underwriters v New York State Banking Dept.*, 83 NY2d 353, 360), courts will generally "defer to the agency's interpretative expertise unless that interpretation is unreasonable, irrational or contrary to the clear wording of the statute" (*Matter of Indus. Indem. Co. v Cooper*, 81 NY2d 50, 54; *see Matter of New York Pub. Interest Research Group v Town of Islip*, 71 NY2d 292, 303; *Matter of Beekman Hill Assn. v Chin*, 274 AD2d 161, 167, *lv denied* 95 NY2d 767). Here, the Legislature precluded optometrists from performing any "invasive modality" and such term was statutorily amplified, in relevant part, to include the infiltration of human tissue. The record reveals that the experts could not concur on whether the meaning of infiltration of human tissue included

placing an object in or through an existing body canal, as occurs in the disputed procedures. Monica Dweck, a physician who specializes in oculoplastic surgery, opined that each of the procedures involved the infiltration of human tissue. On the other hand, Sherry Bass, an optometrist and professor at the State University of New York College of Optometry (hereinafter SUNYCO), stated that the three procedures were not invasive because "human tissue is not cut, altered or otherwise infiltrated." Cooper, an optometrist and instructor at SUNYCO, added that the procedures have "long been within the competence * * * of optometrists to perform" and that the procedures are part of the "basic curriculum" at SUNYCO. Reference to medical dictionaries fails to reveal a dispositive definition of infiltration. One medical dictionary defines "infiltration" as "[t]he act of permeating or penetrating into a substance, cell, or tissue" (Stedman's Medical Dictionary 869 [26th ed 1995]), whereas another defines "infiltrate" as "[t]o pass into or through a substance or a space" (Taber's Cyclopedic Medical Dictionary 1091 [19th ed 1997]). The first definition is ostensibly consistent with the position urged by defendants and adopted by the agencies, but the second lends support to plaintiff's position. While Education Law § 7101 includes an expanded definition of the term invasive modality, the relevant statutory language touches upon technical healthcare matters and is susceptible to more than one reasonable interpretation regarding its application to the disputed procedures.

The existence of such an ambiguity requires deference to agency expertise provided that the interpretation adopted by the agency is reasonable (see Matter of Golf v New York State Dept. of Social Servs., 91 NY2d 656). The Professions Office and DOH exercised their administrative expertise in analyzing numerous technical healthcare procedures and ultimately determined that some of the procedures fell within the parameters of the statutory definition of the practice of optometry and others did not. We conclude that the interpretation of the statute by the Professions Office and DOH, as applied to the specific technical procedures presented, was reasonable.

The remaining issues are academic.

Crew III, J.P., Peters, Mugglin and Rose, JJ., concur. Ordered that the order is reversed, on the law, without costs, plaintiff's motion denied, defendants' cross motions granted, summary judgment awarded to defendants and complaint dismissed.