[869 NYS2d 689]

In the Matter of EMIGRANT BANCORP, INC., Petitioner, v COMMISSIONER OF TAXATION AND FINANCE et al., Respondents.

Third Department, December 24, 2008

## APPEARANCES OF COUNSEL

*Frankfurt, Kurnit, Klein & Selz, P.C.*, New York City (*Patrick J. Boyle* of counsel), for petitioner.

*Andrew M. Cuomo, Attorney General*, Albany (*Owen Demuth* of counsel), for Commissioner of Taxation and Finance, respondent.

## OPINION OF THE COURT

CARPINELLO, J.

The Department of Taxation and Finance issued a notice of deficiency to petitioner for tax years 1998 and 1999. The basis for the deficiency was the Department's finding, following an audit, that petitioner's subsidiary, a thrift institution, incorrectly computed the amount allowable as a deduction for moneys placed in a reserve account for potential losses on qualifying real property loans. While an Administrative Law Judge cancelled the notice of deficiency after a hearing, respondent Tax Appeals Tribunal reversed, prompting this proceeding which involves the interpretation of Tax Law § 1453 (former [h]).

As a general proposition, thrift institutions are required to set aside reserves to account for potential losses on qualifying real property loans (*see* Tax Law § 1453 [h] [6]). This is referred to as a reserve balance or bad debt reserve balance. In computing net income for tax purposes under Tax Law § 1453 (h), thrift institutions are permitted to deduct moneys placed in this reserve, subject to certain limitations. With respect to the subject tax years, petitioner, utilizing the "percentage of taxable income" method, calculated its bad debt deduction by performing calculations set forth under Tax Law § 1453 (former [h] [1] and [2]). Computations outlined under Tax Law § 1453 (former [h] [2]) resulted in a bad debt deduction equaling 40% of entire net income (*see* Tax Law § 1453 [former (h) (2) (A)]) and computations outlined under Tax Law § 1453 (former [h] [1]) reduced this deduction by another 8%, resulting in an annual bad debt deduction of 32%.

In addition to outlining the relevant calculations for bad debt deductions, Tax Law § 1453 (h) further provides for thrift institutions to adjust their bad debt reserve balance every year. For the taxable years in question, additions to the reserve fund could not exceed 6% of outstanding loans (*see* Tax Law § 1453 [former (h) (4) (C)]). It was thus necessary to accurately compute the reserve balance in order to determine the maximum

amount deductible subject to this 6% limitation. For thrift institutions utilizing the percentage of taxable income method, like petitioner, Tax Law § 1453 (former [h] [3] [C]) provided that "reserve[s] for losses on qualifying real property loans shall be increased by the amount determined under paragraph two of this subsection." Because Tax Law § 1453 (former [h] [3] [C]) did not specifically reference "paragraph one" as well, the Department found that the increase to the reserve balance was 40% of entire net income. Since petitioner only increased its reserve balance by 32%, the subject deficiencies resulted.

Distilled to its simplest form, the disputed issue is the amount that petitioner was required to add to its reserve balance under legislation in effect for a relatively brief period of time (i.e., between 1987 and 1995)—32% of its entire net income (as claimed by petitioner and found by the Administrative Law Judge) or 40% of its entire net income (as claimed by the Department and found by the Tribunal). Notably, despite the seeming complexity of the relevant statutory provisions themselves, resolution of this dispute ultimately narrows to the statutory construction of Tax Law § 1453 (former [h]). To this end, in deciding the dispute, we need not delve into the precise audit figures at issue because the parties have stipulated that, if petitioner's interpretation of Tax Law § 1453 (former [h]) prevails, there is simply no tax deficiency. We find that petitioner's interpretation does prevail and, accordingly, annul the Tribunal's determination.

In computing petitioner's bad debt reserve for the tax years in question, the Department relied upon the literal language of Tax Law § 1453 (former [h] [3] [C]) and thus applied Tax Law § 1453 (former [h] [2]) in isolation without factoring in the provisions of Tax Law § 1453 (former [h] [1]). The Tribunal found the absence of a reference to both paragraphs "a strong indication" that the Legislature did not have that intent. Finding the language "clear and unambiguous," the Tribunal therefore did not permit legislative history to "come[ ] into play" in its determination. We decline to defer to the Tribunal's interpretative expertise in this proceeding (see e.g. Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353, 359-360 [1994]; Kennedy v Novello, 299 AD2d 605, 607 [2002], lv denied 99 NY2d 507 [2003]), for we are persuaded that its interpretation of Tax Law § 1453 (former [h]) is unreasonable. Stated otherwise, we find that petitioner met its heavy burden of demonstrating that its interpretation of Tax Law § 1453 (former [h]) is the only reasonable construction (see e.g.

*Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d 44, 49 [1993]).

When confronting an issue of statutory interpretation, our primary objective is to "ascertain and give effect to the intention of the Legislature" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000] [internal quotation marks and citation omitted]; *accord Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). To that end, "[t]he statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning" (*Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d at 660). In our view, it cannot be said that the text of Tax Law § 1453 (former [h] [3] [C]) unambiguously prohibits an adjustment to entire net income under Tax Law § 1453 (former [h] [1]) when computing the amount by which the bad debt reserve should be increased. Nowhere does the text of Tax Law § 1453 (former [h] [3] [C]) expressly limit the computation of the reserve balance to Tax Law § 1453 (former [h] [2]) (by inclusion of the term "solely" or "only" when cross-referencing that paragraph), nowhere does the text expressly set forth that the annual increase to the reserve balance shall be 40% of entire net income and nowhere does the text expressly prohibit utilizing the calculations outlined under Tax Law § 1453 (former [h] [1]) (*compare Appleton Acquisition, LLC v National Hous. Partnership*, 10 NY3d 250, 255 [2008]; *Samiento v World Yacht Inc.*, 10 NY3d 70, 78 [2008]). Given the interplay between Tax Law § 1453 (former [h] [1] and [2]) in calculating entire net income, it is unclear that the reference to Tax Law § 1453 (former [h] [2]) in Tax Law § 1453 (former [h] [3] [C]) unequivocally precludes consideration of Tax Law § 1453 (former [h] [1]). In other words, calculations of entire net income under Tax Law § 1453 (former [h] [2]) are affected by calculations of entire net income in the preceding paragraph. As "all parts of an act are to be read and construed together to determine the legislative intent" (McKinney's Cons Laws of NY, Book 1, Statutes § 97, at 211), we are persuaded that both provisions should be applied when calculating the bad debt reserve. This is consistent with federal law whereby the entirety of amounts placed in bad debt reserves are tax deductible (*see* 26 USC § 585 [a] [1]; § 593 [a] [1]).

Moreover, notwithstanding the literal language of Tax Law § 1453 (former [h] [3] [C]), our review of the pertinent legislative history compels a finding that the statutory scheme in ef-

fect between 1987 and 1995 should be interpreted as providing for a bad debt deduction that is equal to the amount that a thrift institution must add to its bad debt reserve. Since 1975, thrift institutions have been permitted to deduct an amount equal to the reasonable addition to bad debt reserves (*see* Tax Law § 1453 [former (f) (1)], as added by L 1972, ch 167, § 1; *see also* Tax Law former § 219-z [5]; § 219-xx [5]). When the subject statutory provisions were enacted in 1987, the purpose of the entire scheme was to restore the former level of bad debt deductions for thrift institutions utilizing the percentage of taxable income method (*see* Budget Rep on Bills, Bill Jacket, L 1987, ch 817, at 7). Indeed, the 1987 enactments were aimed at improving the tax climate by means of reducing rates and improving a variety of provisions under, among other articles, Tax Law article 32 (*see* Budget Rep on Bills, Bill Jacket, L 1987, ch 817, at 8). These amendments generated no increase in state revenue. In fact, in recommending the legislation, the Division of Budget noted that "[o]ver the longer term, the provisions of the bill affecting taxpayers under Articles 9-a, *32* and 33 are expected to result in a minor revenue loss" (Budget Rep on Bills, Bill Jacket, L 1987, ch 817, at 9 [emphasis added]). With respect to Tax Law § 1453 (h) in particular, the new provisions were intended to allow thrift institutions to compute the bad debt deduction "to nearly equal pre '87 federal" (Letter from Dept of Taxation and Fin, July 20, 1987, Bill Jacket, L 1987, ch 817, at 30).

In 1996, New York's Tax Law was amended to decouple state and federal provisions pertaining to loss reserves of thrift institutions for real property loans. At this time, the repeal of certain federal laws concerning loan loss reserve deductions eliminated a key starting point relied upon since 1987 for determining state tax deductions for additions to loan reserves. In order to maintain a state tax preference for thrifts, the two-step process previously set forth under Tax Law § 1453 (former [h] [1] and [2]) was eliminated and simplified by providing a 32% bad debt deduction up front and also specifying an increase to the bad debt reserve to the same extent, i.e., 32% (*see* Tax Law § 1453 [h] [3], [4] [A], [C]). Notably, according to the sponsor's memorandum in support of this legislation:

> "The purpose of this bill is to decouple from federal Tax Law the current provisions in the [s]tate bank Tax Law that prescribe the treatment of reserves for loan losses by qualifying thrift institutions. The

bill incorporates and assimilates relevant current federal provisions, which are anticipated to be repealed, while *maintaining the preferential current [s]tate Tax Law treatment of loss reserves for real property loans afforded to thrifts*. As such, the bill achieves *consistent tax treatment for thrifts and revenue neutrality for the [s]tate. . . .*

"This bill recognizes that the [s]tate does not want to be in the position of having [f]ederal law changes inadvertently alter the substantive tax policy for New York. The bill provides for an orderly and complete [decoupling] of Article 32 from the [Internal Revenue Code] while maintaining the traditional [s]tate tax preference for thrifts which concentrate their business in real property loans. By continuing the preferential treatment the [s]tate has extended to these taxpayers in the past, this bill's 'status quo' approach will provide certainty in a changing [f]ederal tax environment while reaffirming the [s]tate's recognition of, and commitment to, the important role played by thrift institutions in the economy" (Sponsor's Mem, 1996 McKinney's Session Laws of NY, at 2356-2357 [emphasis added]).

As bad debt deductions under state law as enacted in 1996 and thus in effect during the relevant time period here are equal to the amount a thrift institution may add to its bad debt reserve (i.e., 32%) *and* since the Legislature clearly intended such enactments to maintain the status quo with no additional state revenue, we are persuaded that petitioner's interpretation of the former statutory scheme—and hence its computations for the tax years in question—must be advanced as effectuating the true intent of the Legislature. Thus, while we recognize that generally "omissions in a statute cannot be supplied by construction" (McKinney's Cons Laws of NY, Book 1, Statutes § 363, at 525), "[w]here . . . the legislative intent is clear, an omission in an act may sometimes be considered an inadvertence and supplied by the courts, and words obviously omitted by mistake may be supplied to prevent . . . unreasonableness" (McKinney's Cons Laws of NY, Book 1, Statutes § 363, at 527). Here, the failure to include a cross reference to Tax Law § 1453 (former [h] [1]) within Tax Law § 1453 (former [h] [3] [C]) purports to be

such an inadvertence (*see Brazinski v New York Chiropractic Coll.*, 284 AD2d 647, 649 [2001]).

MERCURE, J.P., SPAIN, MALONE JR. and STEIN, JJ., concur.

Adjudged that the determination is annulled, without costs, petition granted and matter remitted to respondent Commissioner of Taxation and Finance for further proceedings not inconsistent with this Court's decision.