■ In the Matter of LEWIS FAMILY FARM, INC., Appellant, v NEW YORK STATE ADIRONDACK PARK AGENCY, Respondent. (Proceeding No. 1.) In the Matter of LEWIS FAMILY FARM, INC., Respondent, v NEW YORK STATE ADIRONDACK PARK AGENCY, Ap-

pellant. (Proceeding No. 2.) ADIRONDACK PARK AGENCY, Appellant, v LEWIS FAMILY FARM, INC., et al., Respondents. (Action No. 1.) [882 NYS2d 762]—

Garry, J. Appeals (1) from a judgment of the Supreme Court (Ryan, J.), entered August 29, 2007 in Essex County, which converted an action for declaratory judgment into a proceeding (No. 1) pursuant to CPLR article 78 and granted respondent's cross motion to dismiss the petition in proceeding No. 1, (2) from a judgment of said court (Meyer, J.), entered July 2, 2008 in Essex County, which, in proceeding No. 2 pursuant to CPLR article 78 and action No. 1, partially denied a motion by the Adirondack Park Agency to dismiss certain causes of action in proceeding No. 2 and partially granted defendants' motion to dismiss the complaint in action No. 1, and (3) from a judgment of said court (Meyer, J.), entered November 21, 2008 in Essex County, which, among other things, granted petitioner's application, in proceeding No. 2 pursuant to CPLR article 78, to annul a determination of respondent Adirondack Park Agency directing petitioner to apply for a permit and pay a $50,000 civil penalty.

Lewis Family Farm, Inc. (hereinafter Lewis Farm) owns and operates a large organic farm in the Town of Essex, Essex County, within the Adirondack Park and within an agricultural district. In the fall of 2006, Lewis Farm obtained a building permit from the Town and began building three single-family dwelling units on the farm to be used to house farm workers. After construction began, Lewis Farm submitted an application

to the Adirondack Park Agency (hereinafter the APA) for a permit under the APA's authority. The APA determined that the application was incomplete and requested additional information. A disagreement ensued, and the APA eventually issued a cease and desist order prohibiting Lewis Farm from completing the construction until the dispute was resolved. Lewis Farm commenced an action for a judgment declaring that the APA lacked jurisdiction over the project and enjoining it from interfering with the construction. Supreme Court granted the APA's motion to convert the action to a CPLR article 78 proceeding (proceeding No. 1). The court then found that the APA had jurisdiction to enforce the permit requirement, but dismissed the petition as unripe because the APA had not yet issued a final determination. Lewis Farm appeals from this judgment.

The APA thereafter conducted an administrative enforcement proceeding that resulted, in March 2008, in a determination that by constructing the farm housing without an APA permit, Lewis Farm had violated the Adirondack Park Agency Act (*see* Executive Law art 27 [hereinafter the APA Act]) and the Wild, Scenic and Recreational Rivers System Act (*see* ECL 15-2705, 15-2709 [hereinafter the Rivers System Act]). The APA directed Lewis Farm to apply for an "after-the-fact" permit and pay a $50,000 civil penalty.

Lewis Farm challenged this determination in a new proceeding under CPLR article 78 (proceeding No. 2), and the APA commenced an action against Lewis Farm and its principals, defendants Salim Lewis and Barbara Lewis, to enforce its administrative determination. Supreme Court joined these matters and, in July 2008, determined, among other things, that collateral estoppel did not bar any of the claims raised by Lewis Farm and dismissed the individual defendants. The APA appeals from this judgment.

Subsequently, the parties cross-moved for summary judgment as to the APA's causes of action for enforcement of its administrative determination. In November 2008, Supreme Court, among other things, granted Lewis Farm's application in proceeding No. 2 and annulled the APA's March 2008 administrative determination. The court also granted summary judgment to Lewis Farm dismissing the APA's amended complaint in the enforcement action. The APA appeals from this judgment.

The APA Act creates a comprehensive land use plan that classifies all land within the Adirondack Park into six land use categories and sets forth primary and secondary compatible uses

for each category (*see* Executive Law § 805). The APA Act establishes specific uses as class A and class B regional projects in each of the six land use categories (*see* Executive Law § 810), grants jurisdiction to the APA to review and approve all class A regional projects and certain class B regional projects (*see* Executive Law § 809 [1]), and requires those who plan to undertake such projects to apply beforehand to the APA for a permit (*see* Executive Law § 809 [2] [a]).

The farm is located in a "resource management" land use area (*see* Executive Law § 805 [3] [g]). In such areas, "agricultural use structures" are primary compatible uses that are neither class A nor class B regional projects and are exempt from APA jurisdiction and permit requirements, so long as they are located a sufficient distance from neighboring river shorelines (*see* Executive Law § 805 [3] [g] [4] [2]; § 810 [1] [e]; [2] [d]; 9 NYCRR 577.6 [b] [3]). Where, as here, there is no approved local land use program, construction of a "single family dwelling" in a resource management area is a class B regional project that requires a permit from the APA (*see* Executive Law § 810 [2] [d] [1]). Similarly, the Rivers System Act accords jurisdiction to the APA to regulate the use of privately owned land in the immediate environs of certain river systems (*see* ECL 15-2701, 15-2705, 15-2709 [1]). The disputed construction site on the farm is located within a "recreational river" area that is subject to APA permit requirements under the regulations implementing the Rivers System Act (*see* 9 NYCRR 577.4, 577.5 [c] [1]). However, "agricultural use structures" that otherwise comply with regulatory requirements are exempt from these permit requirements (*see* 9 NYCRR 577.4 [b] [3] [ii]; *see also* ECL 15-2709 [2] [c]). The resolution of these appeals depends on whether the disputed housing units on the farm are "single family dwelling[s]" as the APA determined in its administrative enforcement proceeding and therefore subject to the APA's jurisdiction and permit requirements under the APA Act and the Rivers System Act, or "agricultural use structure[s]" exempt from such requirements, as determined by Supreme Court.

The APA Act sets out definitions for 68 words and phrases and provides that "[a]s used in this article, unless the context otherwise requires, [the defined] words and terms shall have the meaning ascribed to them" (Executive Law § 802). A "[s]ingle family dwelling" is defined as "any detached building containing one dwelling unit, not including a mobile home" (Executive Law § 802 [58]). An "[a]gricultural use structure" is "any barn, stable, shed, silo, garage, fruit and vegetable stand *or other building or structure* directly and customarily associ-

ated with agricultural use" (Executive Law § 802 [8] [emphasis added]). The implementing regulations for the Rivers System Act use the same definition of an "agricultural use structure" (*see* 9 NYCRR 577.2 [b]). A "[s]tructure" is "any object constructed, installed or placed on land to facilitate land use and development or subdivision of land, such as buildings, sheds, *single family dwellings*, mobile homes, signs, tanks, fences and poles and any fixtures, additions and alterations thereto" (Executive Law § 802 [62]). The APA Act further defines "[a]gricultural use" as "any management of any land for agriculture; . . . horticulture or orchards; including the sale of products grown or raised directly on such land" (Executive Law § 802 [7]).

As a preliminary matter, Supreme Court properly concluded that it was not required to defer to the APA's interpretation of the APA Act and the Rivers System Act as the agency charged with their enforcement (*see Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 597 [1982]). " '[P]ure legal interpretation' of clear and unambiguous statutory terms" such as the language at issue here requires no such deference because there is little or no need to rely on any special expertise on the agency's part (*Kennedy v Novello*, 299 AD2d 605, 607 [2002], *lv denied* 99 NY2d 507 [2003], quoting *Matter of Toys "R" Us v Silva*, 89 NY2d 411, 419 [1996]; *see Matter of Raritan Dev. Corp. v Silva*, 91 NY2d 98, 102 [1997]). The APA's March 2008 administrative determination rested entirely on statutory interpretation, and neither that interpretation nor its application required " 'knowledge and understanding of underlying operational practices or entail[ed] an evaluation of factual data and inferences to be drawn therefrom' " (*Town of Lysander v Hafner*, 96 NY2d 558, 565 [2001], quoting *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]).

We further agree with the conclusion reached by Supreme Court that the disputed housing units on the farm are "agricultural use structure[s]" within the meaning of the APA Act. The primary goal of statutory interpretation is "to 'ascertain and give effect to the intention of the Legislature' " (*Matter of Emigrant Bancorp, Inc. v Commissioner of Taxation & Fin.*, 59 AD3d 30, 33 [2008], quoting *Riley v County of Broome*, 95 NY2d 455, 463 [2000]; *accord Matter of DaimlerChrysler Corp. v Spitzer*, 7 NY3d 653, 660 [2006]). "To that end, '[t]he statutory text is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning' " (*Matter of Emigrant Bancorp, Inc. v Commissioner of Taxation & Fin.*, 59 AD3d at 33, quoting *Matter of Daimler-*

*Chrysler Corp. v Spitzer*, 7 NY3d at 660). "A court must consider a statute as a whole, reading and construing all parts of an act together to determine legislative intent, and, where possible, should harmonize[ ] [all parts of a statute] with each other . . . and [give] effect and meaning . . . to the entire statute and every part and word thereof" (*Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007] [internal quotation marks and citations omitted]).

Applying these precepts, Supreme Court examined the text of the pertinent statutory definitions and construed statutorily-defined terms or phrases within each definition by reference to the other definitions and by reading them in the context of the APA Act as a whole. Accordingly, the court concluded that, since a "single family dwelling" is included within the statutory definition of a "structure," and an "agricultural use structure" includes any "building or structure directly and customarily associated with agricultural use," it was rational to conclude that a single family dwelling that is "directly and customarily associated with agricultural use" falls squarely within the statutory definition of an "agricultural use structure" and is therefore exempt from APA regulation (Executive Law § 802 [8]). With regard to whether farmworker housing is "directly and customarily associated with agricultural use," the court took note of a related, though not controlling, statutory analysis determining that farmworker residences "contribute to the production, preparation and marketing of crops, livestock and livestock products as a commercial enterprise" (Agriculture and Markets Law § 301 [11]) and are therefore "farm operations" exempt from local zoning regulation under Agriculture and Markets Law § 305-a (*see Town of Lysander v Hafner*, 96 NY2d at 562). We agree with Supreme Court that there is no reason to conclude that the Legislature intended a different result within the Adirondack Park. Thus, although the farmworker residences constructed on the farm fall within the statutory definition of "single family dwelling[s]," they are also "agricultural use structure[s]" exempt from APA jurisdiction because they are "directly and customarily associated with agricultural use."

This conclusion is consistent with the APA Act's proclamation that the need to "protect, manage and enhance" agricultural resources within resource management areas is of "paramount importance," that such areas are of "considerable economic importance to segments of the park," and that the purposes and objectives of resource management areas include "encourag-[ing] proper and economic management of . . . agricultural . . . resources" (Executive Law § 805 [g] [1], [2]). It is likewise con-

sistent with the APA Act's explicit instruction that "[the APA's] rules and regulations . . . shall exclude . . . bona fide management of land for agriculture, livestock raising, horticulture and orchards . . . from review under this section" (Executive Law § 815 [4] [b]). It is further consistent with the constitutionally-mandated state policy to "encourage the development and improvement of its agricultural lands for the production of food and other agricultural products" (NY Const, art XIV, § 4) and with the legislative directive that "[i]t shall be the policy of all state agencies to encourage the maintenance of viable farming in agricultural districts and their administrative regulations and procedures shall be modified to this end" (Agriculture and Markets Law § 305 [3]). Nothing in any of these provisions suggests, as the APA argues, that New York's strong pro-farming policy should apply differently to farms within the Adirondack Park than to farms elsewhere in the state.

The statutory language does not, as the APA contends, evince a legislative intent for the word "structure" in the definition of "[a]gricultural use structure" (Executive Law § 802 [8]) to mean an "accessory structure." This term is specifically defined in the APA Act (*see* Executive Law § 802 [5]), and the Legislature had the opportunity to use it if it had intended to limit the definition of "agricultural use structures" accordingly. It did not do so (*see People v Tychanski*, 78 NY2d 909, 911 [1991]; *People v Dan*, 55 AD3d 1042, 1044 [2008], *lv denied* 12 NY3d 757 [2009]; McKinney's Cons Laws of NY, Book 1, Statutes § 74). The APA's interpretation would require this Court to disregard the clear statutory language (*see Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d at 592) and render the word "structure" as used in the definition of "agricultural use structures" meaningless (*see Matter of SIN, Inc. v Department of Fin. of City of N.Y.*, 71 NY2d 616, 621 [1988]).

Contrary to the APA's contention, the rule of ejusdem generis, by which general statutory language is limited by the specific phrases preceding it, is inapplicable because the general language at issue—here, the word "structure"—is separately defined and, therefore, "is definite and has a precise meaning" (*Johnson v Hudson Riv. R.R. Co.*, 49 NY 455, 455 [1872]). Further, "the rule of ejusdem generis is only a rule of construction; it must yield to the Legislature's evident purpose in enacting the statute" (*Mark v Colgate Univ.*, 53 AD2d 884, 886 [1976]).

Finally, the separate treatment of "single family dwellings" and "agricultural use structures" in some provisions of the APA Act does not compel the conclusion that the Legislature intended the terms to be mutually exclusive. For example, Exec-

utive Law § 802 (50) (g) provides that for the purpose of applying the APA Act's density guidelines to farm land, "all agricultural use structures *and* single family dwellings or mobile homes occupied by a farmer of land in agricultural use, his [or her] employees engaged in such use and members of their respective immediate families, will together constitute and count as a single principal building" (emphasis added). As Supreme Court noted, the definition of an "agricultural use structure" is broader in scope than that of a "single family dwelling," and not all single family dwellings located on farms will qualify as agricultural use structures. Thus, listing them separately, here and throughout the APA Act, was necessary to ensure that the provision applied to single family dwellings whether or not they also qualified as agricultural use structures. Nothing in the APA Act precludes a single family dwelling that is "directly and customarily associated with agricultural use" from qualifying as an agricultural use structure (Executive Law § 802 [8]).

Supreme Court properly concluded that the dwelling units constructed for farmworker housing on Lewis Farm's land are "[a]gricultural use structure[s]" within the meaning of Executive Law § 802 (8) and are therefore exempt from APA jurisdiction and permit requirements. This determination renders academic the parties' claims with regard to the court's earlier judgments.

Mercure, J.P., Rose, Kane and Kavanagh, JJ., concur. Ordered that the judgments are affirmed, without costs.