■ In the Matter of YELLOW BOOK OF NEW YORK, INC., Petitioner, v COMMISSIONER OF TAXATION AND FINANCE et al., Respondents. [906 NYS2d 386]—

Egan Jr., J. Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal which, among other things, sustained the denial of a sales and use tax refund.

Petitioner publishes and distributes telephone directories, containing both advertisements and telephone and address information, to state residents and businesses free of charge. In doing so, petitioner arranges, through various distributors, to have the individual directories delivered door-to-door in the geographic area corresponding to the coverage of the particular directory. In March 2002, pursuant to Tax Law § 1115 (n) (4), petitioner filed a claim for a refund of sales and use tax for promotional materials for the period of 1999-2001 in the amount of $1,910,167.50. The Department of Taxation and Finance approved so much of the refund as pertained to Internet sales and

deliveries made by the United States Postal Service (hereinafter USPS), but denied the remaining portion of the claim contending that exemption did not apply since the directories were not shipped via common carrier, the USPS or a like delivery service. Petitioner thereafter filed a petition with the Division of Tax Appeals seeking a refund of the sum that had been denied by the Department. After a hearing, an Administrative Law Judge determined that petitioner was not entitled to the sales and use exemption for the remaining directories since they were delivered through contract carriers. Petitioner then filed an exception with respondent Tax Appeals Tribunal arguing that the delivery companies used were common carriers or like delivery services and, thus, petitioner was entitled to the exemption. The exception was denied and the Tribunal affirmed the Administrative Law Judge's determination. Petitioner commenced this proceeding in this Court to annul the Tribunal's determination, and we confirm.

Tax Law § 1115 (n) (4) provides an exemption from sales and use taxes for certain promotional materials shipped to customers without charge "by means of a common carrier, [the USPS] or like delivery service." The dispute here centers on the meaning of the terms "common carrier" and "like delivery service," and whether those terms apply to the private delivery companies hired by petitioner.

A statute authorizing a tax exemption will be construed against the taxpayer, who bears the burden of establishing that the tax exemption applies, and that the taxpayer's interpretation of the statute is the only reasonable one (*see Matter of Charter Dev. Co., L.L.C. v City of Buffalo*, 6 NY3d 578, 582 [2006]; *Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d 44, 49 [1993]). When confronting an issue of statutory interpretation, the primary objective is to "ascertain and give effect to the intention of the Legislature" (*Riley v County of Broome*, 95 NY2d 455, 463 [2000] [internal quotation marks and citations omitted]; *see People v Ballman*, 15 NY3d 68, 72 [2010]; *Matter of Emigrant Bancorp, Inc. v Commissioner of Taxation & Fin.*, 59 AD3d 30, 33 [2008]). While "[t]he statutory text is the clearest indicator of legislative intent" (*Matter of Lewis Family Farm, Inc. v New York State Adirondack Park Agency*, 64 AD3d 1009, 1013 [2009] [internal quotation marks and citations omitted]), the legislative history of an enactment should not be ignored (*see Riley v County of Broome*, 95 NY2d at 463). When a statute fails to define a given term, that term should "be given its precise and well settled legal meaning in the jurisprudence of the state" (*Matter of*

*Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d 166, 173 [1988] [internal quotation marks and citations omitted).

While not defined under the Tax Law, historically, a common carrier was one that, for a specified compensation, agreed to transport personal property from one place to another "for all persons that may see fit to employ [it]" (*Gerhard & Hey, Inc. v Cattaraugus Tanning Co.*, 241 NY 413, 417 [1926]), and that holds itself "out to the public as a carrier, in such manner as to render [it] liable to an action if [it] should refuse to carry for any one who wished to employ [it]" (*Allen v Sackrider*, 37 NY 341, 342-343 [1867]). By contrast, a private or contract carrier is one that carries for some particular person under some particular arrangement, but makes no public profession that it will carry for all who apply, nor is it required to (*see Matter of Motor Haulage Co. v Maltbie*, 293 NY 338, 354 [1944]; *Stevenson & Co. v Hartman*, 231 NY 378, 381 [1921]; *Anderson v Fidelity & Cas. Co. of N.Y.*, 228 NY 475, 481 [1920]; *Allen v Sackrider*, 37 NY at 342).

Here, the record reflects that petitioner solicited bids for delivery services to be provided by the private delivery companies by issuing a request for quotation, and then selected the winning proposal from all those submitted based on a three pronged criteria—cost, timeliness and quality. The private delivery companies utilized by petitioner were retained pursuant to a standard form contract with negotiated terms, including rates, delivery schedules and postdelivery verification and reporting requirements. There is no indication that those private delivery companies were required to provide delivery services. On the other hand, in making deliveries of petitioner's directories, the USPS did not operate under a contract, was paid standard rates and made deliveries pursuant to standard delivery schedules. Thus, based on the "precise and well settled legal meaning in the jurisprudence of the state," the private delivery companies used by petitioner were not common carriers (*see Matter of Moran Towing & Transp. Co. v New York State Tax Commn.*, 72 NY2d at 173).

Next, when construed in connection with the words "common carrier" and the USPS (*see Matter of Trump-Equitable Fifth Ave. Co. v Gliedman*, 57 NY2d 588, 595 [1982]; McKinneys Cons Laws of NY, Book 1, Statutes § 239 [a]), the plain meaning of the term "like" with respect to "like delivery service" clearly means delivery services that are the same or substantially similar to the services provided by either common carriers or the USPS (*see* Webster's II New College Dictionary 635 [1995];

Black's Law Dictionary 947 [8th ed 2004]). Here, the services provided by the USPS are akin to services provided by common carriers. As previously outlined, there are clear differences between how common carriers operate and how the private delivery companies retained by petitioner operate. Thus, petitioner has failed to establish "like delivery service[s]" under Tax Law § 1115 (n) (4). In also recognizing that the legislative intent of Tax Law § 1115 (n) (4) was to "enhance the competitive position of New York printers, mailers and related vendors as compared to their out-of-state competitors" (Letter from Commr of Taxation and Fin, July 15, 1996, at 3, Bill Jacket, L 1996, ch 309), most likely by eliminating the tax advantage to out-of-state companies that avoid a nexus with New York State via the use of a common carrier (*see Quill Corp. v North Dakota*, 504 US 298, 310-312 [1992]; *Matter of Moran Towing Corp. v Urbach*, 99 NY2d 443, 449 [2003]; *Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y.*, 86 NY2d 165, 171 [1995], *cert denied* 516 US 989 [1995]), we hold that petitioner failed to establish that its interpretation of Tax Law § 1115 (n) (4) is the only reasonable construction (*see Matter of Federal Deposit Ins. Corp. v Commissioner of Taxation & Fin.*, 83 NY2d at 49).

Finally, we are not persuaded that petitioner is entitled to the exemption set forth in Tax Law § 1115 (n) (4) simply because certain private delivery companies were registered as interstate carriers with the United States or New York State Department of Transportation. The fact that, in conjunction with the abolition of the Interstate Commerce Commission in 1996 (*see* Interstate Commerce Commission Termination Act of 1995, 49 USC § 10101 *et seq.*, as added by Pub L 104-88, 109 US Stat 803), Congress eliminated separate federal licensing requirements for common and contract carriers in favor of one class of motor transport carrier—the motor carrier—(*see* 49 USC § 13902 [a], [d], [f]) does not invalidate continuing distinctions between the two under state law (*see* Transportation Law § 2 [8], [10]). Likewise, the issuance of a certificate to operate as a common carrier of property by the New York State Department of Transportation is not dispositive. It is not uncommon for a trucking company to obtain both common and contract carrier designations, and both the type of authority it holds and the type of relationship it has with its customer must be considered in determining whether the carrier is operating as a common or contract carrier (*see M. Fortunoff of Westbury Corp. v Peerless Ins. Co.*, 432 F3d 127, 130-131 [2d Cir 2005]).

Peters, J.P., Rose, Lahtinen and McCarthy, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.