Matter of Dex Media, Inc. v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y. (2020 NY Slip Op 01417)





Matter of Dex Media, Inc. v Tax Appeals Trib. of the Dept. of Taxation & Fin. of the State of N.Y.


2020 NY Slip Op 01417


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

528226

[*1]In the Matter of Dex Media, Inc., as Successor in Interest to Supermedia LLC et al., Petitioner,
v
Tax Appeals Tribunal of the Department of Taxation and Finance of the State of New York, et al., Respondents.

Calendar Date: January 16, 2020

Before: Garry, P.J., Egan Jr., Lynch, Mulvey and Reynolds Fitzgerald, JJ.


Morrison & Foerster LLP, New York City (Craig B. Fields of counsel), for petitioner.
Letitia James, Attorney General, Albany (Robert M. Goldfarb of counsel), for Commissioner of Taxation and Finance, respondent.



Reynolds Fitzgerald, J.
Proceeding pursuant to CPLR article 78 (initiated in this Court pursuant to Tax Law § 2016) to review a determination of respondent Tax Appeals Tribunal sustaining sales and use tax assessments imposed under Tax Law articles 28 and 29.
Petitioner purchases and delivers Yellow Pages telephone directories throughout the United States, including New York. The directories, which contain both advertisements and telephone and address information, are distributed to businesses and residents free of charge. Between December 2010 and May 2012, petitioner arranged delivery of the directories using the United States Postal Service (hereinafter USPS), Product Development Corporation (hereinafter PDC), Directory Distributing Associates, Inc. (hereinafter DDA) and Federal Express (hereinafter FedEx). Following an audit of petitioner's tax liabilities for the period between December 2010 and May 2012, the Department of Taxation and Finance issued a notice of determination finding that PDC and DDA are not "common carriers" or "like delivery services" within the meaning of Tax Law § 1115 (n) (4), and, as such, petitioner did not qualify for a tax exemption on the costs associated with shipping by these companies. As a result, the Department assessed sales and use taxes on the directories delivered by PDC and DDA.
Petitioner then filed a petition for redetermination with the Division of Tax Appeals. Following a hearing, an Administrative Law Judge sustained the notice of determination, finding that, unlike USPS or FedEx, PDC and DDA were specialized delivery services that contracted with petitioner and, as a result, were not common carriers within the meaning of Tax Law § 1115 (n) (4). In September 2018, respondent Tax Appeals Tribunal affirmed the Administrative Law Judge's determination and sustained the notice of determination, finding that PDC and DDA, at least in their dealings with petitioner, were substantially similar to "contract carriers," not "common carriers." Petitioner then commenced this CPLR article 78 proceeding challenging the Tribunal's determination. We confirm.
Tax Law § 1115 (n) (4) provides a tax exemption for promotional materials, such as the ones herein, as long as those materials are shipped without charge "by means of common carrier, [the USPS] or like delivery service." The dispute centers on the terms "common carrier" and "like delivery services." Petitioner contends that PDC and DDA are common carriers or, alternatively, are "like delivery services."
This Court previously interpreted Tax Law § 1115 (n) (4) and determined that a "common carrier was one that, for a specified compensation, agreed to transport personal property from one place to another for all persons that may see fit to employ it, and that holds itself out to the public as a carrier, in such manner as to render it liable in an action if it should refuse to carry for anyone who wished to employ it. By contrast, a private or contract carrier is one that carries for some particular person under some particular arrangement, but makes no public profession that it will carry for all who apply, nor is it required to" (Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin., 75 AD3d 931, 933 [2010] [internal quotation marks, brackets and citations omitted, lv denied 16 NY3d 704 [2011]].
The record reflects that petitioner solicited bids for delivery services by issuing a request for proposals. PDC and DDA were retained pursuant to a standard form contract with negotiated terms, including rates, delivery schedules and post delivery verification and reporting requirements. PDC and DDA specialized in delivery of directories solely or other advertising products. Based on the above noted definitions, these companies are private, or contract carriers, not common carriers (see Matter of Yellow Book of N.Y. Inc. v Commissioner of Taxation & Fin., 75 AD3d at 933).
The Transportation Law defines motor vehicles carrying property as either common carriers or contract carriers (see Transportation Law § 2 [8], [10]). Common carriers are expressly provided the exemption under the statute. Thus, for the phrase "like delivery service" to have any meaning, some contract carriers must qualify. To find otherwise would eschew "the interpretive canon against surplusage — the idea that every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it to duplicate another provision or to have no consequence" (Nielsen v Preap, ___ US ___, ___ 139 S Ct 954, 969 [2019], citing Kungys v United States, 485 US 759, 778 [1988]). The term "like delivery service" was previously determined to mean delivery services that are the same or substantially similar to the services provided by either common carriers or the USPS (see Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin., 75 AD3d 931 at 933). However, as we found in Yellow Book, a fundamental difference between a common carrier, like the USPS, and a contract carrier is that the common carrier holds itself out to the public as a carrier, in such a manner as to incur liability if it were to refuse to carry for any individual who chose to employ its services (see Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin., 75 AD3d at 933). Here, focusing on the manner and method of delivery by each private company, petitioner lists several (22) similarities as compared to the USPS and FedEx. However, nowhere does petitioner affirmatively state that PDC and/or DDA will carry for all members of the public who wish to engage their services. This critical distinction prevents these carriers from consideration as "like delivery services." There may, in fact, be contract carriers that qualify as "like delivery services," and our ruling in Yellow Book was not meant to disallow this.
Furthermore, it is "fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the [L]egislature" (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998] [internal quotation marks and citation omitted]). The unambiguous intent of Tax Law § 1115 (n) (4) was to "enhance the competitive position of New York printers, mailers and related vendors as compared to their out-of-state competitors" (Letter from Commr of Taxation and Fin, July 15, 1996, at 3, Bill Jacket, L 1996, ch 309), most likely by eliminating the tax advantage to out-of-state companies that avoid a nexus with New York via the use of a common carrier (see Matter of Moran Towing Corp. v Urbach, 99 NY2d 443, 449 [2003]; Matter of Orvis Co. v Tax Appeals Trib. of State of N.Y., 86 NY2d 165, 171 [1995], cert denied 516 US 989 [1995]; Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin., 75 AD3d at 934). The record reflects that petitioner, PDC and DDA are not New York corporations.
"[I]n construing a tax exemption statute, the well-settled rule is that if ambiguity or uncertainty occurs, all doubt must be resolved against the exemption. . . . [T]ax exclusions are never presumed or preferred and before a petitioner may have the benefit of them, the burden rests on it to establish that the item comes within the language of the exclusion. Moreover, a statute authorizing a tax exemption will be construed against the taxpayer unless the taxpayer identifies a provision of law plainly creating the exemption. Thus, the taxpayer's interpretation of the statute must not simply be plausible, it must be the only reasonable construction" (Matter of Charter Dev. Co., L.L.C. v City of Buffalo, 6 NY3d 578, 582 [2006] [internal quotation marks, brackets and citations omitted]).
As petitioner, PDC and DDA are out-of-state businesses, the record does not disclose any nexus between them and New York. On the other hand, the USPS and FedEx have a great presence and nexus within New York, having numerous offices, facilities and employees located in the state. Interpreting the language of the statute as petitioner contends would not give effect to the intent and purpose of the statute. As such, petitioner failed to establish that its interpretation of Tax Law § 1115 (n) (4) is the only reasonable construction. Accordingly, the Tribunal's determination is confirmed.
Garry, P.J., Egan Jr., Lynch and Mulvey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and the petition dismissed.