*575 OPINION OF THE COURT
Donald A. Greenwood, J.
The defendants New York State Department of Environmental Conservation (hereinafter, DEC) and Alexander B. Grannis, as its Commissioner, initially moved to convert the plaintiffs action from that seeking a declaratory judgment to a CPLR article 78 petition, and then for an order dismissing the article 78 proceeding as untimely pursuant to CPLR 3211 (a) (5). The plaintiff then cross-moved to convert the defendants’ motion to dismiss to one for summary judgment pursuant to CPLR 3212. In an order dated November 16, 2010, this court granted the application of the plaintiff to convert to a summary judgment motion by providing notice to both parties of its intent to do so and giving each time to supplement their papers accordingly. (See CPLR 3211 [c]; see also Ward v Guardian Indus. Corp., 17 AD3d 1100 [4th Dept 2005].)
The plaintiff is one of upstate New York’s top suppliers of sand and gravel and provides trucking services, labor and other materials used by contractors to New York State, regional and public authorities, as well as municipalities and the private sector. It owns more than 400 trucks that collectively make the company the largest hauler of bulk commodities in the Northeast. In its complaint, plaintiff seeks to have 6 NYCRR part 248 declared null and void on the grounds that the regulations contained therein are beyond the statutory delegation of authority granted by the Legislature to the DEC, the regulations accelerate the phase-in period authorized by the Legislature and the regulations are in effect ex post facto law in violation of the United States and New York State Constitutions. In addition, the plaintiff seeks an order declaring the Diesel Emissions Reduction Act (DERA) (ECL 19-0323) unenforceable and seeks an order for a schedule for implementation of ECL 19-0323 of 48 months if it is determined that the retrofit requirement applies to any privately owned vehicles.
The defendants’ first argument for conversion of the plaintiffs declaratory judgment action to an article 78 proceeding and dismissal for untimeliness is without merit. An action for a declaratory judgment is an appropriate vehicle for challenging the substance of a regulation. (See Matter of G&C Transp., Inc. v McGrane, 72 AD3d 819 [2d Dept 2010].) In order to determine whether a shorter statute of limitations should apply in a declaratory action such as the four-month statute advocated by the defendants, if an examination of the substance of the relationship out of which the claim arises
*576 “reveals that the rights of the parties sought to be stabilized in the action for declaratory relief are, or have been, open to resolution through a form of proceeding for which a specific limitation period is statutorily provided, then that period limits the time for commencement of the declaratory judgment action.” (Solnick v Whalen, 49 NY2d 224, 229-230 [1980].)
In the case at bar, no enforcement action against the plaintiff has taken place by the DEC. Therefore, while it is clear that the plaintiff could bring its action either as a declaratory judgment action or an article 78 proceeding, if an enforcement action were brought against it, plaintiff has the right to seek a declaration of its rights in relationship to a regulation that may seek to sanction it. Furthermore, while courts will uphold shorter statute of limitations periods for procedural issues relating to the adoption of a regulation (see Stevens v American Water Servs., Inc., 32 AD3d 1188 [4th Dept 2006]; see also Matter of Highland Hall Apts., LLC v New York State Div. of Hous. & Community Renewal, 66 AD3d 678 [2d Dept 2009]), no such protection exists for an agency that adopts a substantively illegal regulation. (See Erie County v Whalen, 57 AD2d 281 [3d Dept 1977]; see also 92-07 Rest, v New York State Liq. Auth., 80 AD2d 603 [2d Dept 1981].) Inasmuch as it is the substance of the regulations that are at issue here, the defendants’ motion to convert the complaint to an article 78 proceeding and dismiss it on statute of limitations grounds is denied. (See Matter of G&C, supra.)
The defendants’ dismissal motion is predicated on the argument that the regulations have a rational basis, that they are within DEC’s authority and are not ultra vires. The plaintiff, in its cross motion for summary judgment, argues that the regulations exceed DEC’s legislative authority. Essentially, the questions before this court are under what circumstances a privately owned and operated vehicle is to be considered to be operated “on behalf of’ a state agency or public authority and what the Legislature intended when it enacted DERA, determining that vehicles operated “on behalf of’ state agencies or authorities should be equipt with retrofit technology. These questions lie within the sole province of this court as they are of “pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent.” (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980].) Interpretation of the term “on behalf of’ does not require any special competence or expertise of the DEC and, as such, no deference to its interpretation is required. *577 (See id.; see also Matter of Lighthouse Pointe Prop. Assoc. v New York State Dept. of Envtl. Conservation, 14 NY3d 161 [2010].) Since neither side has raised an issue of fact, the issues before the court are solely issues of law. The matter is therefore appropriate for summary judgment.
The history of the passage of the legislation and the subsequent promulgation of the regulations is particularly relevant. DERA became effective on February 12, 2007, six months after it was enacted, and, as a result, the legislation created a new statute. (See ECL 19-0323.) DERA mandates that any diesel powered heavy duty vehicle (HDV) that is owned by, operated by or “on behalf of’ or leased by a state agency and state and regional public authority shall be powered by ultra low sulphur diesel fuel. (See ECL 19-0323 [2].) It further mandates that any diesel powered heavy duty vehicle that is owned by, operated by or “on behalf of,” or leased by a state agency must use the best available retrofit technology (BART) for reducing the emissions of pollutants. (See ECL 19-0323 [3].) It defines a heavy duty vehicle as any on- and off-road vehicle using diesel fuel and having a gross vehicle weight greater than 8,500 pounds. (See ECL 19-0323 [1] [b].) DERA provided for a three stage phase-in to be completed by December 31, 2010 and required the Commissioner to promulgate regulations for the implementation of the use of “best available retrofit technology,” “specifying procedures for compliance according to the following schedule.” (ECL 19-0323 [3].) It required that on or before January 1, 2008 and every year thereafter the DEC Commissioner must report to the Governor and Legislature on the use of ultra low sulphur diesel fuel and BART required under the DERA and mandates that the Commissioner’s report include information for vehicles owned and operated by each state agency and public authority covered by DERA. (See ECL 19-0323 [7].)
The regulations challenged in the complaint which resulted from DERA did not become effective until July 30, 2009. (See 6 NYCRR part 248.) According to the complaint, part 248 became effective 1,079 days after DERA was approved by the Governor and 899 days after DERA’s effective date; by the time it was filed on June 30, 2009, nearly 3 years of the 4x/2-year phase-in period provided in the statute had passed. The first phase-in deadline of December 31, 2008, requiring 33% of covered vehicles have BART, had expired and the second phase-in deadline of December 31, 2009, requiring that 66% of covered vehicles have BART, was six months away. The final phase-in *578 deadline for 100% compliance of December 31, 2010 was 18 months after the adoption of the regulations. Pursuant to the regulations, the failure to retrofit 100% of the vehicles by December 31, 2010 can lead to the imposition of civil and criminal penalties, including potential imprisonment. DERA does not contain any instructions or procedures for evaluating and selecting the BART for each vehicle. In addition, the regulations establish a complex multi-step process for determining what kind of retrofit technology, if any, will be deemed to be in compliance with the BART requirement for each individual vehicle.
The complaint alleges that the DEC, in promulgating part 248, included a number of mandates that are not contained in DERA, including but not limited to the performance of an inventory, procedures for replacement or retirement of a vehicle and compliance, use and applicability of products, and the regulatory requirements for reporting and record keeping. Plaintiff contends that it had no notice that DEC would expand the statutory requirements in an attempt to sweep within the regulations coverage of privately owned heavy duty vehicles used to transport supplies or materials that will ultimately be used by a state agency, nor did plaintiff know that the regulations would require it to select retrofit technology for each vehicle. It is alleged that under part 248 plaintiff would be required to install BART on its private fleet, by virtue of the fact that it transports supplies and materials that may eventually end up in a state construction project, or otherwise it cannot have connection to work or services performed by a state agency or authority. Plaintiff claims that it owns hundreds of HDVs and the expected cost to retrofit each vehicle would be $10,000 to $20,000. It is further alleged that the complex multi-step process mandated for evaluation and selection of compliant retrofit technology must be done on a vehicle-by-vehicle basis and that the testing and evaluation process can take two to four months for each vehicle. Plaintiff contends that the financial and practical constraints imposed by DEC’s delay in promulgating regulations, along with its unlawful expansion of the retrofit requirement to the private fleet renders it impossible to certify compliance for 2008, 2009 and 2010. The plaintiff further contends that, in July of 2010, it began receiving letters from entities with which it subcontracts requesting that plaintiff certify its compliance with part 248’s retrofit requirement for the year 2010.
While the statute specifically requires regulations for a procedure for implementation, it does not authorize the Commis *579 sioner to determine who should be regulated. That is left to the legislation itself, which specifically limits the target class of the legislation to “any diesel powered heavy duty vehicle that is owned by, operated by or on behalf of, or leased by a state agency and state and regional public authority with more than half of its governing body appointed by the governor.” (ECL 19-0323 [3].) The specificity of this section is most striking to this court because it manifests the intent of the Legislature to precisely limit those who are covered by the legislation without deferring to the DEC the authority to determine who is covered.
The defendants have failed to establish that there is a rational basis for expanding the definition of the phrase “on behalf of’ beyond its well-established meaning. The plaintiff, on the other hand, has established its entitlement to judgment on its claim that the regulations are ultra vires, in excess of the DEC’s jurisdiction and beyond the statutory delegation of its authority set forth by the Legislature due to the improper expansion of the meaning of the term “on behalf of’ in the regulations. (See Matter of Trump-Equitable Fifth Ave. Co. v Gliedman, 57 NY2d 588 [1982].) In both the statutory language and DEC’s first draft of the regulations circulated in March of 2009, the retrofit requirement was of concern only to public agencies and those private contractors acting “on their behalf,” those contracting directly with an agency to do the work that would otherwise be done by the agency’s employees. (See PreProposal Draft of Regulations.) The phrase “on behalf of’ was defined as
“(i) all heavy duty vehicles used to perform regulated entity work by a prime contractor. Those vehicles include, but are not limited to, all heavy duty vehicles owned, operated or leased by a prime contractor; or
“(ii) all heavy duty vehicles, including airport ground support equipment operating on property owned or controlled by a regulated entity, provided however, such vehicles and equipment are owned or operated by a person or company occupying some or all of the property of the regulated entity, whether or not pursuant to agreement or contract with such regulated entity.” (Pre-Proposal Draft of Regulations § 248-1.1 [b] [20].)
In the draft, a “prime contractor” was defined as “any person or entity that contracts directly with the regulated entity to perform regulated entity work (‘prime contract’) and who is *580 responsible for the completion of the contract with the regulated entity. This definition shall not include subcontractors.” (Id. § 248-1.1 [b] [23].) “Regulated entity work” was defined as meaning
“to provide labor, services, material and/or equipment which is provided by the regulated entity through its employees or prime contractors except it does not include labor, services, material and/or equipment provided by: (i) a shipping company . . . or (ii) a manufacturer or delivery company which does not deliver materials or equipment to the regulated entity on a regular and frequent basis.” (Id. § 248-1.1 [b] [26].)
Therefore, pursuant to the Pre-Proposal Draft of Regulations, the retrofit requirement applied only to vehicles used by prime contractors to perform the work of the state agency or authority. (See id. § 248-1.1 [b] [23], [26].) That draft covered only those vehicles “used to perform regulated entity work by a prime contractor.” (See id. § 248-1.1 [b] [20].)
The final regulations, however, were expanded to define “on behalf of’ as follows: “to provide, by a contractor, labor, services, materials and/or equipment to a regulated entity which are integral to the performance of regulated entity work by a regulated entity.” (6 NYCRR 248-1.1 [b] [20].) In addition, the term “contractor” in the final version is defined as including “but is not limited to prime contractor, subcontractor, and any contractor(s) hired by such subcontractor.” (See 6 NYCRR 248-1.1 [b] [10].) This expansion of the definition of the phrase “on behalf of’ exceeds both the common use of the phrase, as well as the legislative intent. The plain meaning of that phrase is defined as when one acts as the representative or agent of the other (see Webster’s New Universal Unabridged Dictionary), or “if a representative or of proxy for.” (American Heritage Dictionary of the English Language.) In fact, an agency relationship is defined as the “consent of one person to allow another to act on his or her behalf.” (Fils-Aime v Ryder TRS, Inc., 40 AD3d 917, 918 [2d Dept 2007].) The DEC’s own initial interpretation of the term was consistent with its common use, as connoting a representative relationship.
Moreover, in addition to the inconsistency with the plain meaning of the statutory language, the DEC’s interpretation of the term “on behalf of” in DERA is in conflict with the Legislature’s general approach to the diesel retrofit issue and with its specific approach when it chooses to impose a retrofit *581 mandate on contractors and subcontractors. Only once in the narrow context limited to off-road vehicles working on a specific category of projects has the Legislature imposed a retrofit requirement on the private sector and specifically required contractors and subcontractors to retrofit all heavy duty diesel nonroad vehicles used in Lower Manhattan redevelopment projects. (See L 2004, ch 231.) As such, had the Legislature intended to use such explicit language here, it would have done so. The fact that it did not use such explicit language is evidence that its intent was otherwise. (See McKinney’s Cons Laws of NY, Book 1, Statutes § 230.) Even if there were some ambiguity in the phrase “on behalf of,” the resolution must be in favor of a narrow interpretation; “the words used in a statute are construed in connection with, and their meaning is ascertained with reference to, the words and phrases with which they are associated.” (Matter of Trump-Equitable Fifth Ave. Co., 57 NY2d at 595.) In addition, the DEC’s expansion of the term is inconsistent with the use of the phrase in other statutes.* [1] It is therefore clear from the use of the term in the statutes that the Legislature intended to connote a representative or agency relationship.
Defense counsel’s argument that the term in the context of DERA should be used interchangeably with the concept of doing business with the state is flawed, as is its assertion that it would enforce the regulations only against those private contractors during the “core work” or “core mission” of the agency or authority. The DEC’s role, however, is to promulgate regulations consistent with the legislation not to substitute its own *582 policy choices for that of the Legislature or to expand the scope of the legislation to those to whom it was never intended to apply. (See Matter of Trump-Equitable Fifth Ave. Co., supra.) This purported standard also creates a regulatory morass leading to further uncertainty for the regulated community, clearly not the intent of the Legislature. Following the DEC’s contention to its logical conclusion, the questions would then become: who decides if a private contractor is doing the core work of an agency or supporting that agency’s core mission and how is the regulated community to know whether a particular subcontract supports such a core mission? Under the regulations, a subcontractor delivering materials to multiple job sites, only one of which is controlled by the state, would be in violation if its HDV is not equipped with the appropriate retrofit equipment. The statute, as enacted by the Legislature and signed by the Governor, appears from its very content to have been specifically restricted to be enforced against state vehicles. The addition of the wording “on behalf of’ was added to prevent a loophole in the legislation. Many state agencies and authorities have prime contracts with contractors who, in fact, do work on their behalf or, in other words, perform work the state would otherwise do. Under those circumstances, the agency relationship is clear and the agent has accepted the responsibility delegated to it by the principal. Contrast this with the DEC’s definition where there is no such acceptance of responsibility or duty. It was not meant to blur the line to include almost any contractor or subcontractor doing business with the state.
It is this court’s analysis that the Legislature’s intent was a gradual phase-in of retrofit pollution control devices on state owned or operated heavy duty trucks. The legislation declined to require any political subdivision of the state to comply, although clearly the Legislature had authority to do so, and it would have met the goals of the legislation. The reason was obviously the cost of compliance. There was not an attempt to require pollution control retrofit devices on all heavy duty vehicles. Moreover, despite the wide regulatory authority that the Legislature has granted the DEC in the past, the Legislature declined to leave it up to the Commissioner to determine which entities’ vehicles shall be covered.[2] Very simply put, if the Legislature had intended on requiring retrofit equipment for *583 virtually every contractor doing business with the state, it would have said so.
As the Bill Jacket demonstrates, even those advocating that the Governor sign the bill never anticipated the cost affecting anyone other than the state, because only the state and its authorities were to be regulated. (See Letter of G. Thomas Tranter, Jr., President of Corning Incorporated, to Governor Pataki, dated June 26, 2006, Bill Jacket, L 2006, ch 629, at 39.)
In its Regulatory Impact Statement, the DEC lists an unnumbered section “Alternatives.” (See Regulatory Impact Statement at 27.) Under section 2 it states, “Interpret the ‘on behalf of text referred [to] in ECL § 19-0323 to include only prime contractors of the state and public authorities. The proposed regulations require all contractors including subcontractors to comply with the statutory requirements.” (Id.) The statement then goes on to characterize this regulation as “the most conservative interpretation of the law,” which is clearly not the case given the Department’s own draft regulations. (Id.) The clear focus the expanded language in the final regulation accomplishes is “greater environmental protection since a larger number of HDV’s will be subject to regulatory requirements.” (Id.) It does not more accurately define the term “on behalf of.” It redefines it to mean “doing business with.”
While the statement does not estimate how many more HD Vs would be covered, there is nothing to contradict plaintiffs contention in the record that the numbers increase “exponentially.” So while the DEC’s statement in its recitation of the authority granted to it by various statutes for “protecting the air resources of New York including providing for the prevention and abatement of air pollution” (see ECL 3-0301 [1] [b]) is accurate, this authority is not without limits and it is particularly limited when the Legislature acts to specifically enact a measured, incremental approach.
The costs cited by the plaintiff in its papers of retrofitting its equipment was not addressed in any meaningful fashion in the legislative history because there was not a consideration that someone other than the state or one directly working on behalf of the state would have to absorb that cost. Clearly, the Legislature did not intend to have the meaning of a term commonly referred to as an agency relationship to be expanded to include contractors and subcontractors that they could have included in the legislation by simply saying that any contractor or subcontractor doing business with a state agency or authority using an HDV is covered by this legislation.
*584 Therefore, unless and until the Legislature acts to include any contractor or subcontractor doing business with the state or one of its affiliates, it is this court’s interpretation that the Legislature intended to limit those regulated by ECL 19-0323 to those contractors with a direct, prime agency relationship with a state agency or state authority based on its plain language and history.
The definitions in the draft regulations dated March 20, 2007, and numbered 20, 23 and 26, most closely and rationally interpret the provisions of ECL 19-0323 and any provisions in 6 NYCRR part 248 that are inconsistent with those definitions exceed the authority of the Commissioner to enact said regulations.
The plaintiff, however is not entitled to determinations that the regulations improperly accelerated the phase-in period authorized by the Legislature or that the regulations constitute an impermissible ex post facto law in violation of the New York State and US Constitutions. There is no dispute that DEC used its enforcement discretion and determined not to utilize the regulatory requirements for 2008 and 2009. As such, it cannot be said that the regulations are retrospective, have worked to the disadvantage of the offender affected by them or have been punitive in nature at this time. (See Miller v Florida, 482 US 423 [1987].) Nor has it been contended that those entities which contract directly with the state and which the Legislature intended to be subject to the requirements were not given proper notice. It is clear from the complaint and all of the plaintiffs submissions that it has not at this time attempted to comply with the regulations or made any modifications of its vehicles.
The representations made to the court at oral argument were that the state and its agencies as well as public authorities as defined in the legislation are in fact in compliance of this legislation and part 248 regulations. The court notes that none are parties to this lawsuit.[3]
Given the clear mission statement by the Legislature, the court sees no reason to strike the regulation or to declare the statute unenforceable; only that portion of the regulation in which the Department exceeded its authority is declared void.
*585 The relief granted the plaintiff is limited to instances when the plaintiff is not a prime contractor with a state agency or state authority.
Since the court agrees that the DEC’s initial definition of “on behalf of’ was correct and in compliance with the statute, this court will adopt those definitions for the purpose of this decision.
Now, therefore, for the foregoing reasons, it is ordered, adjudged and declared that 6 NYCRR 248-1.1 (b) (20) is ultra vires, in excess of jurisdiction, affected by error of law, beyond the statutory delegation of the authority set forth by the Legislature, null, void and of no force and effect due to DEC’s unlawful expansive definition of the term “on behalf of’ as set forth above, and it is further ordered, adjudged and declared that the remainder of 6 NYCRR part 248 is a valid exercise of the regulatory authority conferred on the DEC by the Legislature, and it is further ordered, adjudged and declared for purposes of the enforcement of ECL 19-0323 the term “on behalf of’ shall mean and be so defined in 6 NYCRR 248-1.1 (b) (20) as follows:
“(i) all heavy duty vehicles used to perform regulated entity work by a prime contractor. Those vehicles include, but are not limited to, heavy duty vehicles owned, operated or leased by a prime contractor; or
“(ii) all heavy duty vehicles, including airport ground support equipment, operating on property owned or controlled by a regulated entity, provided however, such vehicles and equipment are owned or operated by a person or company occupying some or all of the property of the regulated entity, whether or not pursuant to agreement or contract with such regulated entity,”
and it is further ordered, adjudged and declared for purposes of the enforcement of ECL 19-0323 the term “prime contractor” shall mean and be so defined in 6 NYCRR part 248 as follows: “Prime contractor means any person or entity that contracts directly with the regulated entity to perform regulated entity work (‘prime contract’) and who is responsible for the completion of the contract with the regulated entity. This definition shall not include subcontractors,” and it is further ordered, adjudged and declared for purposes of the enforcement of ECL 19-0323 the term “regulated entity work” shall mean and be so defined in 6 NYCRR part 248 as follows:
*586 “Regulated entity work means to provide labor, services, material and/or equipment which is provided by the regulated entity through its employees or prime contractors except it does not include labor, services, materials and/or equipment provided by:
“(i) a shipping company (including overnight delivery companies); or
“(ii) a manufacturer or delivery company which does not deliver materials or equipment to the regulated entity on a regular and frequent basis,”
and it is therefore ordered that the defendants hereby shall promulgate amended regulations consistent with this decision.

. The plaintiff in its motion papers refers to more than 2,900 examples of the term in New York’s statutes. For example, Public Authorities Law § 359 (1) authorizes the New York State Thruway Authority to, instead of contracting for work by private contractors, request that the work be performed by the Commissioner of the Department of Transportation and his subordinates “as agents for, at the expense of, the authority,” while subdivision (2) refers to such work by DOT as work “performed on behalf of the authority by the commissioner.” The State Constitution authorizes the Chief Judge of the Court of Appeals to appoint a Chief Administrator of the Courts to supervise the administration and operation of the Unified Court System “on behalf of the chief judge.” (NY Const, art VI, § 28 [b].) Civil Service Law § 76 (2) authorizes the Civil Service Commission to designate persons, in writing, to hear appeals from disciplinary proceedings “on its behalf.” Several statutes refer to actions that can be brought by the Attorney General “on behalf of’ the state. (See Executive Law former § 11 [6]; see also State Finance Law § 190.) The General Obligations Law defines “power of attorney” as “a written document ... by which a principal with capacity designates an agent to act on his or her behalf.” (General Obligations Law § 5-1501 [2] []].)

. It should also be noted that the Legislature exempted from coverage vehicles “subject to a lease or public works contract entered into or renewed prior to the effective date of this section.” (ECL 19-0323 [3].)

. Although by letter dated December 13, 2010, the DEC states that it will not enforce part 248 until a determination on the appeal of a separate case by the Appellate Division, Third Department.