In the Matter of NEW YORK CONSTRUCTION MATERIALS ASSOCIATION, INC., et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents. [921 NYS2d 686]—

Garry, J. Appeal from a judgment of the Supreme Court (Williams, J.), entered April 26, 2010 in Saratoga County, which dismissed petitioners' application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, declare ECL 19-0323 to be unconstitutional and annul certain regulations promulgated by respondent Department of Environmental Conservation.

In August 2006, the Legislature enacted the Diesel Emissions Reduction Act (hereinafter DERA) to address the public health threat posed by diesel fuel combustion (*see* L 2006, ch 629, §§ 1, 2; ECL 19-0323). Under DERA, diesel powered heavy duty vehicles "owned by, operated by or on behalf of, or leased by" state agencies and certain public authorities are required to use ultra low sulfur diesel fuel (hereinafter ULSD) and the best available retrofit technology (hereinafter BART) in order to reduce the emission of air pollutants (ECL 19-0323 [2], [3]). Among other things, DERA established a three-year timetable by which affected vehicles were to be phased into compliance (*see* ECL 19-0323 [3]) and authorized respondent Department of Environmental Conservation (hereinafter DEC) to promulgate regulations "necessary and appropriate to carry out [DERA's] provisions" (ECL 19-0323 [4]). When DEC promulgated these regulations on June 30, 2009 (*see* 6 NYCRR parts 248-1.1—248-11.1), the first of three compliance deadlines established by DERA had passed, and only 18 months remained of the phase-in period.

Petitioners, individual producers of construction materials and providers of services that contract with the New York State University Construction Fund and the not-for-profit trade association that represents their interests, commenced this combined CPLR article 78 proceeding and action for a declaratory judgment, seeking, among other things, to annul the regulations promulgated by DEC. Supreme Court dismissed the petition, and petitioners appeal.

Petitioners first contend that DEC's interpretation of the DERA language imposing diesel emission controls on vehicles operated "on behalf of" respondent State of New York exceeds its authority (ECL 19-0323 [2], [3]).[1] DEC's regulations define "on behalf of" to mean "to provide, by a contractor, labor, services, materials and/or equipment to a regulated entity which are integral to the performance of regulated entity work by a regulated entity" (6 NYCRR 248-1.1 [b] [20]). A contractor is defined as "any person or entity that contracts directly or indirectly with a regulated entity to provide labor, services, materials and/or equipment on behalf of the regulated entity. Contractor includes but is not limited to prime contractor, subcontractor, and any contractor(s) hired by such subcontractor" (6 NYCRR 248-1.1 [b] [10]). A prime contractor is defined as "any person or entity which contracts directly with a regulated entity and who is responsible for the completion of the contract with the regulated entity" (6 NYCRR 248-1.1 [b] [23]), and a subcontractor as "any person or entity that performs for and takes from the prime contractor a specific part of the labor or material requirements of the prime contract; which definition shall include, without limitation, any contractor(s) hired or retained by said subcontractor while performing under the prime contract" (6 NYCRR 248-1.1 [b] [28]). While petitioners concede that the Legislature intended some privately-owned vehicles to be covered by DERA, they assert that nothing in the statute indicates a legislative intent to regulate such a broad segment of the private sector by including subcontractors, sub-subcontractors, and others who did not contract directly with the state.

Our initial inquiry is whether DEC's interpretation of the statutory language is entitled to judicial deference. Deference is required when technical expertise or specialized knowledge of operational practices is required to interpret statutory language, but no such expertise is required to construe the phrase "on behalf of" (*see Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459 [1980]; *Matter of Judd v Constantine*, 153 AD2d 270, 272 [1990]). Further, nothing in DERA indicates that deference should be accorded on the ground that the Legislature delegated "comprehensive, interpretive and subordinate policy-making authority" (*Matter of Judd v Constantine*, 153 AD2d at 273) to DEC on the subject of diesel emission controls in vehicles used for state work. DERA was not enacted "in broad outline," with

---

1. Petitioners' challenge is focused on the BART requirement, apparently because it is more onerous than the ULSD requirement, but the class of vehicles affected is identical.

details left to DEC to arrange, nor is it evident that the Legislature found it difficult to lay down definite and comprehensive rules (*Matter of Levine v Whalen*, 39 NY2d 510, 515 [1976]). On the contrary, DERA lays out detailed requirements, defines several technical terms and specifies, among other things, a precise timetable for compliance, particular grounds on which DEC may grant waivers, and details that the agency must include in annual reports (*see generally* ECL 19-0323). Relative to the statute's applicability, DERA precisely defines those vehicles for which compliance is required and provides an extensive list of vehicles to be excluded, such as those used for agriculture, mowing or snow plowing, "harvesters, wood chippers, forwarders, log skidders" and certain emergency response vehicles (ECL 19-0323 [1] [b]). Given such specificity and the lack of any language in DERA that explicitly confers policymaking authority on DEC, DERA's direction to DEC to "promulgate regulations as necessary and appropriate to carry out [DERA's] provisions" (ECL 19-0323 [4]) cannot be read to confer authority on that agency to make policy determinations as to the scope of the statute's coverage.

DEC further contends that it retains policy-making authority in this arena pursuant to other statutes giving the agency general authority to regulate air quality (*see* ECL 3-0301, 19-0301), but the degree of precision and detail contained in DERA plainly indicates the Legislature's intent to withdraw such policy determinations from the agency with regard to diesel emissions in vehicles used for state work (*see Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d 225, 232 [1996]). Thus, no deference is required, and "the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent" (*Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d at 459; *see Matter of Grella v Hevesi*, 38 AD3d 113, 116 [2007]).

In determining legislative intent, the statute is to be construed according to its unambiguous language or, if necessary, by reference to the legislative history (*see Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin.*, 75 AD3d 931, 932 [2010], *lv denied* 16 NY3d 704 [2011]; *see also Matter of Gruber [New York City Dept. of Personnel—Sweeney]*, 89 NY2d at 231-232). DERA does not define the phrase "on behalf of." When a statutory term is undefined, it must "be given its precise and well settled legal meaning in the jurisprudence of the state" (*Matter of Yellow Book of N.Y., Inc. v Commissioner of Taxation & Fin.*, 75 AD3d at 932 [internal quotation marks and citation omitted]). Prior legal usage does not support DEC's

broad construction. The phrase "on behalf of" is legislatively used to connote a direct representative or agency relationship (*see e.g.* Agriculture and Markets Law § 120 [5] [pertaining to "action(s) brought by the commissioner of environmental conservation on behalf of the people of the state of New York"]; CPLR 215 [4] [permitting the attorney general and district attorneys to commence certain actions "on behalf of the state"]; Education Law § 355 [2] [a], [j], [x] [authorizing state university trustees to take certain actions "on behalf of" the state and others]). Petitioners assert that their legal research revealed more than 2,900 uses of the term "on behalf of" in New York legislation in which the term routinely connoted a representative, agency, or proxy relationship. Further supporting such a construction, an agent is defined, in part, as one who acts on behalf of a principal (*see* 2A NY Jur 2d, Agency and Independent Contractors § 1). Thus, DEC's interpretation of the term to mean a class including but not limited to prime contractors, subcontractors and sub-subcontractors extends well beyond the phrase's commonly accepted legal meaning.[2]

If the Legislature did intend to extend DERA's applicability to such a broad class, language making such an intention explicit was available in prior legislation mandating diesel emission controls in privately-owned vehicles performing public work. When the Legislature decided to impose BART and ULSD requirements on certain private diesel vehicles engaged in redevelopment efforts in lower Manhattan, it did so, not by using the phrase "on behalf of," but by explicitly directing public agencies to include the requirements in agreements with their "contractors and subcontractors" (L 2004, ch 231, § 1 [e]). Similarly, in imposing BART and ULSD requirements on certain other privately-owned diesel vehicles, the Administrative Code of the City of New York required public works contracts and solicitations to specify that "all contractors" were subject to the requirements (Administrative Code of City of NY § 24-163.3 [c] [1], [2]). Notably, the Administrative Code of the City of New

---

**2.** DEC's regulatory interpretations in this record give rise to considerable uncertainty as to the scope of the agency's intended regulation. For example, though DEC has asserted that the DERA regulations do not apply to vehicles supplying state agencies under ordinary purchase contracts, as opposed to public works contracts, in its written responses to public comments, DEC indicated that it would enforce the regulations against trucks delivering heating and vehicle fuel under state-wide purchase contracts and to vehicles delivering office supplies to state buildings, when the deliveries were "integral" to its work. DEC's claim that the regulations would be applied only to vehicles providing services or materials "integral to the mission" of the contracting agency was similarly belied by DEC's written responses to public comments.

York contains other provisions separately imposing BART and ULSD requirements on diesel vehicles "owned by, operated by or on behalf of, or leased by" city agencies—language identical to that in DERA, but not, apparently, understood to encompass contracted private vehicles (Administrative Code of City of NY § 24-163.3 [b] [1], [2]). In enacting DERA, the Legislature is presumed to have been aware of such prior legislation on this subject and to have chosen the statutory language accordingly (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 222).

We find nothing in the language of DERA, construed as a whole (*see Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007]), indicating that the Legislature intended it to extend beyond prime contractors. The statute's grandfathering provision refers to "vehicle[s] subject to a lease or public works contract" (ECL 19-0323 [3]), but makes no reference to subcontractors or other private suppliers with indirect relationships to the state. DERA similarly limits DEC's reporting requirements to vehicles "owned or operated" by state agencies and authorities (ECL 19-0323 [7]). The statute's legislative findings refer to vehicles that the state "owns or operates through contract" (L 2006, ch 629, § 2). Reference to the statute's legislative history further supports a construction of the phrase "on behalf of" that does not extend beyond privately-owned vehicles under direct contract with the state (*see generally* Bill Jacket, L 2006, ch 629).[3]

Accordingly, we conclude that the Legislature did not intend to impose DERA's requirements on vehicles other than those used by prime contractors under direct contract with state agencies and public authorities, as defined in 6 NYCRR 248-1.1 (b) (23). "[A]n administrative agency may not promulgate a regulation that adds a requirement that does not exist under the statute" (*Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg*, 78 NY2d 194, 204 [1991]). The definitions of "on behalf of," "contractor," and "subcontractor" in 6

---

3. The sponsor's memorandum indicated that the statute's requirements would extend to "the fleets of businesses doing work for the state," but also stated that the bill was directed at state-owned vehicles and "vehicles under contract with the state" (Bill Jacket, L 2006, ch 629, at 6). The report of the Division of the Budget stated that it would apply to the "State and its contractors" and would increase costs for "businesses with State contracts" (Budget Report on Bills, Bill Jacket, L 2006, ch 629, at 8-9). Other documents indicate that the Legislature had extensive information before it pertaining to the economic impact that DERA's requirements would have on state-owned and directly-contracted vehicles, but gave little or no consideration to their economic impact on subcontractors, sub-subcontractors and other private-sector businesses who participate indirectly in state work.

NYCRR 248-1.1 (b) (10), (20) and (28) impose DERA's requirements on a larger class of private vehicles than the Legislature intended and must be annulled as in excess of DEC's authority (*see Riccelli Enters., Inc. v New York State Dept. of Envtl. Conservation*, 30 Misc 3d 573, 584-585 [2010]).

Petitioners further argue that the regulations should be reformed to allow additional time for compliance because of DEC's substantial delay in promulgating them. However, nothing in DERA established any set time limit by which DEC was required to implement the regulations (*see Matter of Court Reporting Inst. v New York State Educ. Dept.*, 237 AD2d 1, 4 [1997]; *Matter of Schulz v New York State Dept. of Envtl. Conservation*, 200 AD2d 793, 796 [1994], *lv denied* 83 NY2d 758 [1994]; *compare Matter of Janus Petroleum v New York State Tax Appeals Trib.*, 180 AD2d 53, 54-55 [1992]). Moreover, the BART and ULSD requirements were established when DERA was enacted in 2006 and have remained unchanged since then, placing private contractors with potentially-affected vehicles on notice. Finally, as previously noted, the compliance timetable in question was established by the Legislature as part of DERA's explicit provisions. DEC is not authorized to change such "clear and unambiguous terms of the law" (*Kahal Bnei Emunim & Talmud Torah Bnei Simon Israel v Town of Fallsburg*, 78 NY2d at 204 [internal quotation marks and citation omitted]), nor should this Court substitute its judgment for the Legislature's in determining how much time is required for compliance (*see Matter of Taylor v Sise*, 33 NY2d 357, 365 [1974]).

Finally, petitioners contend that DEC's regulations are unconstitutional in that they may be retroactively applied in violation of the Ex Post Facto Clause of the US Constitution. Even assuming that DERA and its regulations could be found to be so punitive in purpose or effect as to render the constitutional prohibition against retroactive punishment applicable (*see Smith v Doe*, 538 US 84, 92 [2003]; *compare Hunter v Warren County Bd. of Supervisors*, 21 AD3d 622, 625 [2005]), no retroactive enforcement has occurred. After promulgating 6 NYCRR part 248, DEC issued a letter indicating that, because of its delay in promulgating the regulations, it would exercise enforcement discretion and would not enforce the regulations as to violations that took place in 2008 or 2009, nor would it enforce the reporting requirements for those years.[4] Petitioners' contention that DEC could withdraw this promise at any time is mere conjecture

---

4. In December 2010, DEC also indicated that it would not enforce 6 NYCRR part 248 pending the outcome of this appeal (*see Riccelli Enters., Inc. v New York State Dept. of Envtl. Conservation*, 30 Misc 3d at 584 n 3).

and, as retroactive enforcement may never occur, the question is not ripe for judicial review (*see Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510, 518 [1986], *cert denied* 479 US 985 [1986]).

Mercure, J.P., Spain, Rose and Lahtinen, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as declared that 6 NYCRR 248-1.1 (b) (10), (20) and (28) were promulgated in compliance with the Diesel Emissions Reduction Act and dismissed the petition on that ground; petition reinstated to that extent and annul 6 NYCRR 248-1.1 (b) (10), (20) and (28); and, as so modified, affirmed.