[7 NYS3d 854]

# In the Matter of DONALD J. TRUMP, Individually and on Behalf of THE TRUMP ORGANIZATION, Petitioners, v NEW YORK STATE JOINT COMMISSION ON PUBLIC ETHICS, Respondent.

Supreme Court, Albany County, February 11, 2015

### APPEARANCES OF COUNSEL

*Carter, Conboy, Case, Blackmore, Maloney & Laird, P.C.*, Albany (*David R. Homer* of counsel), for respondent.

*Alan G. Garten*, New York City, for petitioners.

## OPINION OF THE COURT

HENRY F. ZWACK, J.

Petitioner Donald J. Trump, individually and on behalf of The Trump Organization (Trump parties) has filed this CPLR article 78 proceeding, which seeks to compel the respondent New York State Joint Commission on Public Ethics (Commission) to vote whether to commence an investigation of a complaint filed by the Trump parties on December 23, 2013 (complaint),[1] and also seeks an order directing the Commission to formally notify the Trump parties of its decision.

Respondent Commission moves to dismiss the subject article 78 petition. Petitioner Trump parties oppose.

In moving to dismiss the Trump parties' article 78 petition—which sounds in mandamus—respondent argues that a Commission determination whether to hold a vote is not a ministerial act, but rather one that involves the exercise of the Commission's discretion, and is therefore not properly the subject of an action in mandamus. Further, respondent argues that it is not required to disclose any information regarding a Commission investigation, including even whether the Commission held a vote on a filed complaint. In support, respondent offers the affirmation of Monica Stamm, Chief of Staff and Deputy Counsel for the Commission, who asserts that a vote by the Commission on whether to commence a substantial basis investigation is not a ministerial act, and instead requires the Commission "to exercise discretion to determine a course of conduct based upon its considered judgment in light of the particular circumstances before it." This discretion, argues Ms. Stamm, is based upon the Commission's considered judgment in light of the particular circumstances and affects both the substance and timing of the vote. Ms. Stamm further identifies the various factors which are involved in determining whether to launch a "substantial basis investigation." According to Ms. Stamm, factors which make a time limitation discretionary, rather than mandatory, include, for example, a determination by the Commission as to whether sufficient information is available, whether the subject of the complaint requires, or

---

1. The complaint alleges New York State Attorney General Eric Schneiderman violated state ethics laws by accepting donations from the Trump parties while simultaneously investigating and prosecuting a civil fraud action against them.

should be granted, more time to respond to the allegations before a vote is taken, and whether a subject's response creates a need for further fact gathering or legal analysis. Ms. Stamm further offers the opinion that the Trump parties have no clear legal right to the relief they seek, namely a vote on the complaint within 45 days. Additionally, she argues that there are only two ways that the Trump parties may be notified regarding its complaint—the first is in the case when an investigation is not warranted: "if the commission determines at any stage that there is no violation or that any potential conflict of interest has been rectified, it shall so advise the individual and the complainant, if any"—and the second method of notification is when the Commission publishes, on its website, the results of an actual investigation. Ms. Stamm further argues that the nature of the Commission's proceedings are so confidential that the Trump parties cannot affirmatively allege that the Commission has not yet voted on the Trump parties' complaint.

The Trump parties oppose the motion to dismiss, disagreeing with the Commission's characterization of the *act* of holding a vote on a complaint being a discretionary act—pointing to the explicit language in the statute, which requires a vote on whether to investigate a complaint within 45 days of filing. Petitioner further argues that the statute requires, at the very least, it be given notice of the Commission's determination if the vote is to determine that no investigation will be made of the Trump parties' complaint.

CPLR 7804 (f) affords a respondent in an article 78 proceeding the opportunity to either answer the petition or make a motion to dismiss. Respondent has moved to dismiss, without reserving the right to answer. On a motion to dismiss, where there are no questions of fact to be determined—here the dispositive facts are undisputed—the only questions to be determined are questions of law, and with the arguments of the parties fully set forth in their respective papers, the matter can be concluded without affording respondent an opportunity to answer (*Matter of Laurel Realty, LLC v Planning Bd. of Town of Kent*, 40 AD3d 857 [2d Dept 2007]; *Matter of Bayswater Health Related Facility v New York State Dept. of Health*, 57 AD2d 996 [3d Dept 1977]).

The subject article 78 petition seeks mandamus to compel, which, simply stated, is "an extraordinary remedy that lies only to compel the performance of acts which are mandatory,

not discretionary, and only when there is a clear legal right to the relief sought" (*Matter of Johnson v Corbitt*, 87 AD3d 1214, 1215 [3d Dept 2011], *lv denied* 18 NY3d 802 [2011]). The act to be compelled "must be ministerial, nondiscretionary and non-judgmental, and be premised upon specific statutory authority mandating performance in a specific manner" (*Matter of Brown v New York State Dept. of Social Servs.*, 106 AD2d 740, 741 [3d Dept 1984]).

> "While distinguishing between discretionary and ministerial acts is not without difficulty, the general rule is that 'discretionary or quasi-judicial acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result' " (*Verizon N.Y., Inc. v Village of Athens*, 43 AD3d 526, 528 [3d Dept 2007] [citation omitted], quoting *Tango v Tulevech*, 61 NY2d 34, 41 [1983]), including compelling the performance of an act by a specific date when there is "a clear expression of intent in the statute to require a set timeline in all instances" (*Matter of Shaw v King*, 123 AD3d 1317, 1319 [3d Dept 2014]).

Towards determining the sweep of Executive Law § 94, including the Commission's procedural rules and regulations, the court is mindful it should give effect to the plain meaning of the statute, particularly when the language is clear and unambiguous, with any interpretation by the court to be guided by the legislature's intent (*Commonwealth of the N. Mariana Is. v Canadian Imperial Bank of Commerce*, 21 NY3d 55 [2013]). It is only in those instances when the statute's interpretation is dependent upon the subject agency's specialized knowledge, that the court defers to the agency's interpretation of the language at issue (*Matter of Kent v Cuomo*, 124 AD3d 1185 [3d Dept 2015]).

Prior to the enactment of the State Public Integrity Reform Act of 2011, Executive Law § 94 contained no time limitation for the Commission to determine whether to investigate an ethics complaint. A major change to the statute,[2] a law meant to "strengthen the public's trust and confidence in government

---

2. "It is a well settled tenet of statutory construction that '[t]he Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law' " (*Commonwealth*, 21 NY3d at 61, quoting McKinney's Cons Laws of NY, Book 1, Statutes § 193).

through fair and just adjudicatory procedures that afford all parties due process protection and fair and just resolution of all matters" (*Matter of O'Connor v Ginsberg*, 106 AD3d 1207, 1211 [3d Dept 2013]; 19 NYCRR 941.1), was the legislative addition of a timeline by which the Commission must make the determination whether to investigate a complaint or not.

Surely, the statute's plain language,[3] which required the Commission to vote within 45 days of the filing of the Trump parties' complaint, is incapable of any other understanding. Understanding that the legislature is presumed to have acted intentionally in setting a specific timeline, it cannot be said that it otherwise remained within the discretion of the Commission to adhere to any other timetable (*Matter of New York Constr. Materials Assn., Inc. v New York State Dept. of Envtl. Conservation*, 83 AD3d 1323, 1326 [3d Dept 2011]). Any contrary view, in effect allowing the Commission to either ignore the timeline or substitute a *confidential* process is simply inconsistent with the purpose and spirit of statute and is thus incapable of being an "accurate apprehension of legislative intent" (*Kent*, 124 AD3d at 1186).

It would appear from Stamm's affirmation that the Commission does not strictly hold to the statutorily imposed time limitation and requirement, including the requirement to vote on whether to investigate a complaint within 45 days of its filing. Certainly, if the Commission had held a vote within the required 45 days, and the vote was a vote not to investigate, the Trump parties would have long ago received notification. Although Stamm advises in paragraph 10 of her affirmation that "the Trump Parties, as any other person who files a complaint with the Commission, have 'no clear right' to compel the Commission to take any action with respect to a possible investigation," on the strict requirement that a vote be held within 45 days, the court disagrees. The requirement that a vote be held within 45 days from receipt of a complaint is a purely ministerial act—which must be carried out in accordance with the clear statutory language.[4]

Equally unpersuasive is Stamm's assertion that the statute's strict confidentiality requirements prohibit disclosure of whether a vote has been held on the subject complaint. While

---

3. Executive Law § 94 (13) (a).

4. Albeit the court can appreciate the difficulties, from time to time, in meeting statutory timelines, respondent must make appropriate accommodations to do so—rather than outright ignore the legislature's clear directive.

not particularly concerned with the progress of an ongoing investigation, the court has been asked to compel the vote on the complaint, or at a minimum ascertain if the statutorily required vote has indeed occurred. Here, all that is required of the Commission is a simple yes or no answer, without giving away any potentially prejudicial confidential information.[5] The court has balanced the need for confidentiality inherent in the statute with petitioner's request that a vote be compelled, in the event the Commission has not already done so.

On this record, the court will deny the respondent's motion to dismiss. The court will direct, to the extent that the Commission has not voted on petitioner's complaint, to hold a vote within 30 days, with written confirmation to the court within 15 days following that the vote was held.

Accordingly, it is ordered, that the motion to dismiss the petition is denied, and it is further ordered, that, to the extent it has not already done so, respondent is directed to comply with Executive Law § 94 by conducting a vote within 30 days from the date of this order as to whether to conduct an investigation into the subject complaint, and it is further ordered, that respondent is directed to file a written report with the court within 45 days detailing whether or not said vote has occurred within the 30-day period.

---

**5.** Ms. Stamm's affirmation fails to specify how the knowledge that an investigation is pending would be prejudicial to an independent investigation into the New York State Attorney General. While reference is made to the memorandums of law, it is well established that a memorandum of law has no probative value (*Brown v Smith*, 85 AD3d 1648 [4th Dept 2011]).