Garry, J.
Cross appeals from two judgments of the Supreme Court (McGrath, J.), entered June 19, 2012 in Albany County, which, among other things, partially granted petitioners’ applications, in two proceedings pursuant to CPLR article 78, to annul determinations of the Department of Health adjusting petitioners’ Medicaid reimbursement rates.
Pursuant to Public Health Law article 28, residential health care facilities, also known as nursing homes, are reimbursed through the Medicaid program for the costs incurred per patient, per day with respect to their Medicaid-eligible patients (see 10 NYCRR 86-2.10 [a] [6]). The costs are generated pursuant to a statutory base period and are subject to a “case mix” adjustment with respect to the facilities’ particular patient needs (see 10 NYCRR 86-2.10 [a] [5]; 86-2.30), and are further adjusted to account for inflation that has occurred since the base year (see 10 NYCRR 86-2.10 [a] [8]). There are four components that make up a facility’s rate: direct, indirect, noncomparable and capital costs (see 10 NYCRR 86-2.10 [a] [6]; [b] [1] [ii]). The direct, indirect and noncomparable costs are trended for inflation by application of the “roll factor” and, as so calculated, constitute a facility’s operating costs (see 10 NYCRR 86-2.10 [a] [7]). The roll factor reflects the cumulative effect of inflation from the base year to the rate year and is calculated by multiplying each yearly rate of inflation, known as a “trend factor,” during that period (see 10 NYCRR 86-2.10 [a] [8]).
The Department of Health is required to notify facilities such as petitioners of their annual rates at least 60 days before those rates go into effect (see Public Health Law § 2807 [7]). Accord *1179 ingly, in order to calculate the impending year’s rates, the Department relies on an estimated rate of inflation for the coming year as determined by the federal Consumer Price Index (hereinafter CPI) (see Public Health Law § 2807-c [10] [c] [2]). After that calendar year has passed, and the actual rate of inflation for that year can be determined, the difference between the estimated rate of inflation and the final rate of inflation is reconciled and a “banking adjustment” is applied to the current year’s rates (see Public Health Law § 2807-c [10] [c] [3]). Additionally, that final trend factor is included in the roll factor in order to calculate current and future reimbursement rates (see Public Health Law § 2807-c [10] [c] [4]).
The Legislature amended Public Health Law § 2808 in 2006, changing the base year for calculating rates from 1983 to 2002 (see L 2006, ch 109, § 1, part C, § 47; Public Health Law § 2808 [2-b] [b] [i]). This provision, commonly known as the “rebasing law,” was intended to go into effect January 1, 2009 (see L 2006, ch 109, § 1, part C, § 47). In 2007, Public Health Law § 2808 was further amended to provide that the case mix classification system would only consider Medicaid patients, as opposed to the facility’s entire population, beginning with the time period on or after April 1, 2009 (see L 2007, ch 58, § 1, part C, § 36; Public Health Law § 2808 [2-b] [g]). Rebasing was expected to result in increased costs to the Medicaid program; these costs would be offset in part by the savings achieved through the case mix amendment.
In August 2008, among other deficit reduction measures, the Legislature passed part F of section 1 of chapter 497 of the Laws of 2008, providing that, in determining rates of payments for services provided on or after January 1, 2009, respondent was to “apply a trend factor projection equal to the otherwise applicable trend factor projection attributable to the period January 1, 2009 through December 31, 2009 in accordance with [Public Health Law § 2807-c (10) (c)] less one percentage point” (L 2008, ch 497, § 1, part F, § 5 [1]). In February 2009, the Legislature postponed the effective date of the rebasing law, moving it from January 1, 2009 to April 1, 2009 (see L 2009, ch 2, § 1, part I, §§ 2, 3). Subsequently, in April 2009, the Legislature reduced the 2009 trend factor to zero with respect to “services provided on and after April 1, 2009,” notwithstanding Public Health Law § 2807-c (10) (c) (L 2009, ch 58, § 1, part B, § 48). Additionally, in December 2009, the reduction to zero of the trend factor was extended to cover the period from January 1, 2010 through March 31, 2010 (see L 2009, ch 503, § 1, part C, § 2).
*1180 In April 2009, the Legislature also enacted part D of section 1 of chapter 58 of the Laws of 2009, known as the “scale back law” (see L 2009, ch 58, § 1, part D, § 2). This law provided that, notwithstanding the rebasing law, or any other contrary provision of law, “with regard to adjustments to [M]edicaid rates of payment for inpatient services provided by residential health care facilities for the period April 1, 2009 through March 31, 2010, made pursuant to [the rebasing law],” respondent was permitted to make proportional adjustments to the reimbursement rates in order to ensure that the aggregate increase in rates did not exceed, nor fall below, $210 million (L 2009, ch 58, § 1, part D, § 2). The reduction to zero of the trend factor was also continued through 2010 (see L 2010, ch 109, § 1, part B, § 1). Since the scale back law constituted a change to the Medicaid State Plan, federal approval was required to enforce this provision (see 42 CFR 447.256). Such approval, sought in 2009, was granted in 2011, after which the Department apprised facilities of their rates for various periods between April 1, 2009 and January 1, 2011.
In December 2008, the Department notified facilities, including petitioners, of their 2009 Medicaid reimbursement rates. The 2009 rates were calculated to include the changes due to rebasing from 1983 to 2002 and the adjustment of the case mix classification system. The initial trend factor for 2009, according to the CPI, was 3.1% and, after deducting one percentage point (see L 2008, ch 497, § 1, part F, § 5), the trend factor applied to petitioners’ 2009 rates was 2.1%. After rebasing was postponed to April 1, 2009, the Department had to recalculate petitioners’ rates for the first three months of 2009 and, in the meantime, the Department based the rates on those for December 31, 2006, as adjusted for inflation in accordance with Public Health Law § 2807-c (10) (c) (see L 2009, ch 2, § 1, part I, §§ 2, 3). Subsequently, in September 2009, the Department notified petitioners of their new 2009 rates, which were derived from the 1983 base costs trended for inflation. At that time, the rates continued to reflect an initial trend factor of 2.1%, which was incorporated into the roll factor.
In 2010, the final trend factor for 2009 was determined to be -.4%; however, this trend factor only applied to the first quarter of 2009, as the remainder of the year was subject to a zero trend factor (see L 2009, ch 58, § 1, part B, § 48). The Department reconciled the final trend factor with the initial trend factor of 2.1% and again deducted one percentage point (see L 2008, ch 497, § 1, part F, § 5), thus arriving at a final trend factor of -3.5% for the first quarter of 2009. The rate periods on and af *1181 ter April 1, 2009 were not subject to any trends (see L 2009, ch 503, § 1, part C, § 2). In June 2011, after obtaining federal approval of the scale back law, the Department notified petitioners of their Medicaid reimbursement rates for periods including January 1, 2010 through March 31, 2010 and April 1, 2010 through December 31, 2010. After determining the dollar impact of the -3.5% banking adjustment as applied to the 2.1% trend factor used to calculate rates for the first quarter of 2009, a miscellaneous charge was included in petitioners’ 2010 rates. The 2009 banking adjustment resulted in a total reduction of approximately $53 million in reimbursement.
In October 2011, petitioners commenced these two proceedings pursuant to CPLR article 78 seeking to annul respondent’s determination to make that adjustment to their 2010 Medicaid reimbursement rates. Supreme Court partially granted the petitions, finding that respondent was permitted to apply the 2009 banking adjustment to the 2010 rates, but further determining that the appropriate final trend factor for 2009 was -2.5%, not -3.5%. Petitioners now appeal from that part of the judgments dismissing the petitions to the extent that they sought an annulment of respondent’s determination to make any banking adjustment to petitioners’ 2010 Medicaid reimbursement rates. Respondent cross-appeals from the judgments, arguing that Supreme Court erred by determining that the final trend factor was -2.5% instead of -3.5%.
Petitioners have failed to meet their heavy burden of demonstrating that the methodology utilized by the Department in calculating their rates for the period in question was unreasonable or unsupported by any evidence (see Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006]; Matter of Society of N.Y. Hosp. v Axelrod, 70 NY2d 467, 473 [1987]; Matter of Brooklyn Hosp. Ctr. v Shah, 101 AD3d 1546, 1547 [2012], lv denied 21 NY3d 851 [2013]). We reject petitioners’ contention that the scale back law provided for an aggregate increase to the Medicaid reimbursement rates which was not subject to any further adjustments, including adjustments for trending. The plain language of the scale back law substantively applies only to those adjustments “made pursuant to [Public Health Law § 2808 (2-b) (b)]” — the rebasing law (see L 2006, ch 109, § 1, part C, § 47) — and provides that such adjustments must equal $210 million (L 2009, ch 58, § 1, part D, § 2). This language indicates that the Legislature intended to limit the increase in costs attributable to rebasing (see L 2009, ch 58, § 1, part D, § 2). Notably, the scale back law did not apply until the period on or after April 1, 2009 (see L 2009, ch 58, § 1, part *1182 D, § 2). Similarly, the rebasing law, although originally expected to go into effect in January 2009 (see L 2006, ch 109, § 1, part C, § 47), was postponed until April 1, 2009 (see L 2009, ch 2, § 1, part I, § 3). Thus, as the base year for January 1, 2009 through April 1, 2009 remained 1983, the limiting provisions of the scale back law did not apply to those rates and, therefore, the period of January 1, 2009 through March 31, 2009 was properly subject to the trending provisions of Public Health Law § 2807-c (10) (c).
Additionally, we are not persuaded that the Legislature’s reduction of the 2010 trend factor to zero precludes application of the 2009 banking adjustment to petitioners’ 2010 rates. Significantly, the language of these unconsolidated laws does not eliminate trend factors or roll factors, or otherwise leave inflation out of the equation; rather, it establishes a zero percent trend factor for the time period on or after April 1, 2009 (see L 2010, ch 109, § 1, part B, § 1; L 2009, ch 503, § 1, part C, § 2; L 2009, ch 58, § 1, part B, § 48). Moreover, nothing in these laws implicates an abandonment of the recovery that would be achieved by application of the 2009 banking adjustment (see L 2010, ch 109, § 1, part B, § 1; L 2009, ch 503, § 1, part C, § 2; L 2009, ch 58, § 1, part B, § 48). Significantly, the laws at issue here involved efforts by the Legislature to reduce the costs associated with Medicaid reimbursement during a particularly trying economic period. As Public Health Law § 2807-c (10) (c) (3) requires that the difference between the initial trend factor and the actual inflation rate for a prior calendar year “be included in the prospective trend factor for the current year,” here, the final trend factor of -3.5% for 2009 could mathematically be included in the zero trend factor for 2010 as a negative amount. Thus, petitioners have failed to make a compelling showing that either the scale back law or the reduction of the 2010 trend factor to zero precluded the application of the 2009 banking adjustment to their 2010 rates (see Matter of Brooklyn Hosp. Ctr. v Shah, 101 AD3d at 1548-1549; Matter of Reconstruction Home & Health Care Ctr., Inc. v Daines, 65 AD3d 786, 787 [2009], lv denied 14 NY3d 706 [2010]; Matter of New Franklin Ctr. for Rehabilitation & Nursing v Novello, 64 AD3d 1132, 1135-1136 [2009], lv denied 13 NY3d 716 [2010]).
Turning to respondent’s cross appeal, we agree that the Department was authorized by these laws to reduce both the initial and the final trend factor by one percentage point. The Legislature provided, as relevant here, that notwithstanding the statutory trend factor procedures, the rebasing law or any other contrary provision of law, when determining rates of payments
*1183 for services provided on and after January 1, 2009, the Department “shall apply a trend factor projection equal to the otherwise applicable trend factor projection attributable to the period January 1, 2009 through December 31, 2009 in accordance with [Public Health Law § 2807-c (10) (c)] less one percentage point” (L 2008, ch 497, § 1, part F, § 5). Where, as here, “the statutory language is special or technical and does not consist of common words of clear import, courts will generally defer to the agency’s interpretative expertise unless that interpretation is unreasonable, irrational or contrary to the clear wording of the statute” (Kennedy v Novello, 299 AD2d 605, 607 [2002], lv denied 99 NY2d 507 [2003] [internal quotation marks and citations omitted]). Additionally, as the law at issue is susceptible to different interpretations, the Department’s past practice is given great weight in determining the law’s meaning (see Matter of County of St. Lawrence v Daines, 81 AD3d 212, 218-219 [2011], lv denied 17 NY3d 703 [2011]; see also Barrett v Lubin, 188 AD2d 40, 44 [1993]; McKinney’s Cons Laws of NY, Book 1, Statutes § 129). Here, the record confirms that the Department has previously amended both the initial and the final CPI pursuant to legislative directives containing the phrase “trend factor projection” (see e.g. L 2007, ch 58, § 1, part C, § 29 [1]). We are therefore persuaded that the Department’s interpretation of this law is in accord with its historical practice (see Matter of Brooklyn Hosp. Ctr. v Shah, 101 AD3d at 1548-1549; Matter of County of St. Lawrence v Daines, 81 AD3d at 218-219). Moreover, we note that such an interpretation effectuates the Legislature’s intent to achieve cost savings in the Medicaid program (see Signature Health Ctr., LLC v State of New York, 92 AD3d 11, 16 [2011], lv denied 19 NY3d 811 [2012]).
Finally, we find that the Department improperly applied the banking adjustment to petitioners’ 2010 rates by listing it as a miscellaneous adjustment on the rate sheets. Public Health Law § 2807-c (10) (c) (3) requires that the final 2009 trend factor be “included in the prospective trend factor for [2010]”; instead, however, the Department calculated a roll factor using the zero trend factor statutorily established for 2009 and added the banking adjustment as a miscellaneous charge on petitioners’ rate sheets. This application of the banking adjustment failed to comport with the requirements of Public Health Law § 2807-c and, therefore, exceeded the parameters set by the Legislature (compare Matter of Brooklyn Hosp. Ctr. v Shah, 101 AD3d at 1549). Accordingly, the matter must be remitted to respondent for a proper application of the banking adjustment.
Rose, J.P, Spain and Egan Jr., JJ., concur. Ordered that the *1184 judgments are modified, on the law, without costs, by reversing so much thereof as revised the trend factor from -3.5% to -2.5%; matter remitted to respondent for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.